661 So.2d 986 (1995)
Kenneth THERIOT, et ux.
v.
STATE of Louisiana, DEPARTMENT OF WILDLIFE AND FISHERIES and Joseph Matassa.
No. 94 CA 1536.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
Rehearing Denied May 25, 1995.
Writ Denied October 6, 1995.
*987 Marvin Gros, Donaldsonville, for Appellants, Kenneth Theriot and Lynda Theriot.
Alvin Washington and Philip G. Caire, Baton Rouge, for Appellees, State of Louisiana, Department of Wildlife And Fisheries, and Joseph Matassa.
Before GONZALES, PARRO and REDMANN[1], JJ.
GONZALES, Judge.
This is an appeal from a trial court judgment dismissing the plaintiffs' claims based on a finding that the Department of Wildlife and Fisheries and one of its agents were immune from tort liability under La.R.S. 56:65.

FACTS
The facts of this case were succinctly set forth by the trial court in its reasons for judgment as follows:
This involves the arrest of Kenneth Theriot by agents of the Louisiana Department of Wildlife and Fisheries on May 9, 1990, and allegations of injuries caused during the process. There is no question that Mr. Theriot was not the individual for whom the agents were searching. The questions for the court involve the reasonableness of the actions of the agents and whether their actions caused the injuries to Mr. Theriot. Mr. Theriot had planned to take his boat out shrimping on the morning of May 10, 1990. In preparation he had placed the boat in dry dock for repairs which he had completed. He and his deck hand, Herbert Domangue[,] placed the boat in the water about 6:30 p.m. on May 9, and took it to Houston Foret's dock in Cocodrie to obtain supplies and fuel for the shrimping trip scheduled the next day. While at this dock he was approached by two LDWF agents, Captain Matassa, who he did not know, and Lt. Vidos[,] who had arrested him before and who he recognized.
During that day, [Louisiana Department of Wildlife and Fisheries] agents had been conducting a surveillance of the Caillou Boce area for boats which were illegally shrimping. Lt. Chauvin was conducting an air surveillance and directing the efforts of the agents on the water, headed by Sgt. Martin, to the various boats involved. Four boats had been identified and were being apprehended in the area. They were two Lafitte skiffs and two large shrimpers, the "Mdme. Gertrude" and the "Miss Judy Ann". Theriot's boat is named the "Prissy Chrissy". As the boats were apprehended, an agent (on loan from north Louisiana and unfamiliar with the area) was placed on each of the large boats and they were ordered to return to Cocodrie. Sgt. Martin, in his boat, escorted the two skiffs. All were ordered to Pye Foret's (not Houston Foret) dock back at Cocodrie.
The on site agents solicited the assistance of Matassa and Vidos who were back ashore to apprehend the boats when they arrived. Chauvin and Martin both testified that radio contact was very poor and they were unable to relay the full details to the agents ashore. Matassa and Vidos were unable to ascertain the names of the boats which were ordered in [or] the names of the captains of either boat. They did understand that they were to be on the look out for a blue and white steel double rig shrimp boat, however. Theriot's boat[,] the "Prissy Chrissy[,]" is a steel double rig blue and white boat. There was conflicting testimony about whether the name was painted on Theriot's boat at the time of this occurrence. Houston Foret, who was present at the ensuing incident; Kenneth Theriot; Lynda Theriot; *988 and Herbert Domangue all testified that the name was clearly visible on the boat. Matassa and Vidos both testified that the name was not visible on the boat and the dock area where the confrontation took place was poorly lit. It would seem to this court that this would make little or no difference since Matassa and Vidos had not received the name of the boat from the agents on site.
When Matassa and Vidos arrived at Houston Foret's dock at about 8:30 p.m., they observed the blue and white boat with several men working on it. Thinking it was the boat which they sought[,] they approached the men and began to investigate. Plaintiff[s'] witnesses testified that Theriot was questioned about the name of his boat and his only response was to ask what he had done wrong. His witnesses further testified that he used no profanity and did not raise his voice nor yell or shout. Both agents refuted this version and testified that Theriot was asked if he was one of the boats ordered in from Calliou Boce. They both testified that he became belligerent, yelling and cursing, and told them that he was and they should go ahead and arrest him. As previously noted, Matassa had never seen Theriot before, but Vidos had previous dealings with him, having arrested him twice before.
Matassa, the senior officer in charge of the investigation, then took Theriot into custody and turned him facing a conveyor with his hands on the conveyor for support. He then moved Theriot's feet apart. Theriot's witnesses (Theriot, Foret, and Domangue) all stated that they saw Matassa kick Theriot's feet to move them apart. Vidos was not in the immediate area of the pat down and did not see this part of the incident. Matassa, however, stated that he used his hands from a squatting position to spread apart the plaintiff's legs. Matassa denies that Theriot fell forward. Theriot and Foret both state that the plaintiff fell forward. Theriot says that he hit his head on the conveyor. Foret did not see this occur. Domangue did not see the plaintiff fall forward, thus, did not see him hit his head. The fall forward is the cause that Theriot attributes to his injuries.
After placing the handcuffs on Theriot and placing him in his vehicle, Matassa was able to re-establish radio contact with Martin. Upon discovering that the "Prissy Chrissy" was not one of the boats involved, in the illegal shrimping, he released Theriot. At the time of the cuffing, Foret testified that he tried to tell the agents that they had the wrong person. He said he had spoken with Paul Theriot's wife (not the plaintiff) on the telephone and she told him that her husband was one of the one's [sic] taken into custody. He said he tried to explain this to the officers and inform them of the identity of the boats which were coming in, but they would not listen to him and told him to shut up. Concurrent, with Matassa searching Theriot, cuffing him, and placing him in his vehicle, Lt. Vidos had an opportunity to further examine the "Prissy Chrissy" and observed that it was not rigged for shrimping, had no nets hung, no water on the deck and there were no signs of fish [or] shrimp.
After his release, Theriot arrived home at about 9:30 where he related the incident to his wife, Lynda. He complained of pain in his left arm and bruising above his left wrist. He awoke at 3:30 with pain in his neck, left arm, and left hand. He went to get Domangue and they went shrimping. This venture would normally last up to 7 days. However, Theriot testified that the pain was so severe that he had to return by noon. This testimony was verified by Domangue. He went to see his family physician, Dr. Plauche[,] who prescribed [pain] pills and muscle relaxers. Subsequently, he had disc surgery on his neck and needs surgery to his lower back. He lacks financial means for this second surgery. He states that he has not been able to pursue his vocation since this incident.
On May 3, 1991, Kenneth and Lynda Theriot filed suit against the Department of Wildlife and Fisheries and Joseph Matassa, alleging that Kenneth was arrested without probable cause and that the negligence of Matassa resulted in Kenneth's injuries, pain and suffering, embarrassment, and loss of income. *989 Lynda Theriot alleged damages resulting from a loss of consortium and from embarrassment.
After a trial held on August 4 and 5, 1993, the trial court rendered judgment in favor of the defendants, denying plaintiffs' claims and assessing them with all costs. According to its reasons for judgment, the trial court found that "Captain Matassa was acting reasonably and in good faith within the confines and color of his office as a wildlife and fisheries agent," and thus, was entitled to immunity under La.R.S. 56:65.
Plaintiffs appeal from the adverse judgment, asserting the following assignments of error:
(1) The trial court erred in allowing the defendants to use the good faith immunity statute, La.R.S. 56:65, as a defense when it was not properly pled nor listed in the pretrial order as a defense.
(2) The trial court erred in finding that Agent Matassa acted in good faith and with probable cause when he arrested Mr. Theriot.
(3) The trial court erred in failing to award damages to Mr. Theriot for the illegal arrest and physical harm he sustained.

FAILURE TO ASSERT IMMUNITY DEFENSE IN PRETRIAL ORDER
Under La.R.S. 56:65, neither the Department of Wildlife and Fisheries nor any of its agents can be held liable for any arrest made by the agent in his good faith performance of his duties. The statute provides in pertinent part:
A. Neither the department nor any enforcing officer, agent, or other employee of the department shall incur any liability whatsoever for any search, arrest, seizure, or other act done by him in the good faith performance of his duties under this Chapter....
In their first assignment of error, plaintiffs contend that the trial court erred in allowing the defendants to use the La.R.S. 56:65 immunity defense when it was not raised in defendants' pleadings or in the pretrial order. In opposition, defendants contend that immunity was properly raised in Paragraph 10 of its original answer to plaintiffs' petition. Paragraph 10 of defendants' answer reads, "Joseph Matassa acted in good faith upon information and belief and with probable cause to believe that plaintiff had committed a crime and, therefore, is entitled to the benefits of qualified immunity."
In accordance with La.C.C.P. art. 1551, after a trial court has held a pretrial conference, it shall render a pretrial order "which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel." Thereafter, the pretrial order "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." La.C.C.P. art. 1551.
The theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of cases. The trial court is vested with much discretion in determining when a pretrial order should be modified. However, that discretion is necessarily controlled by the principle that it must be exercised to prevent substantial injustice to the parties who have relied on the pretrial rulings or agreements and structured the preparation and presentation of their case accordingly. Day v. South Line Equipment Company, 551 So.2d 774, 779-780 (La.App. 1st Cir.), writ denied, 553 So.2d 474 (La.1989).
Although defendants concede that the pretrial order in this case does not specifically address the issue of good faith immunity, we do not find that plaintiffs suffered any injustice because of its omission. First, although defendants did not specifically refer to La.R.S. 56:65 in their answer, they did assert that Matassa's actions were in good faith and that he was entitled to "qualified immunity." This apprised plaintiffs that the defense of immunity was an issue to be addressed in the case. Second, the defendants quoted and discussed La.R.S. 56:65 in their pretrial memorandum, a copy of which was presumably served upon and read by *990 plaintiffs' counsel.[2] Further, much of the testimony elicited at the trial focused on the reasonableness of Matassa's actions, a focus which plaintiffs could not reasonably claim is unrelated to an immunity defense. In other words, plaintiffs cannot claim surprise at the trial court's reliance on La.R.S. 56:65 in dismissing plaintiffs' claim against the defendants merely because the actual statute itself was not cited in the pretrial order. This assignment of error is without merit.

REASONABLENESS OF MATASSA'S ACTIONS
In assignment of error number two, plaintiffs contend that the trial court erred in finding that Agent Matassa acted in good faith and with probable cause when he arrested Kenneth Theriot. The statutes which dictate the enforcement authority of wildlife agents provide, in pertinent part:
Wildlife agents shall see that every person dealing in any way in any of the wildlife, fish, and game of the state in territory assigned to him for which a license must be obtained, has in his possession, and is the owner of, an official license. La.R.S. 56:54(A).
[C]ommissioned wildlife agents ... may, without a warrant, arrest any person violating any of the laws or regulations under the jurisdiction of the [Department of Wildlife and Fisheries].... La.R.S. 56:54(B).
[A]ny commissioned wildlife agent may visit, inspect and examine, with or without search warrant ... any ... boat ... for... fish or other aquatic life or any parts thereof whenever there is probable cause to believe that a violation has occurred. La.R.S. 56:55(A).
In view of the vast expanse of marsh and isolated wildlife habitat extant throughout the state, and to facilitate the effective protection of private and public rights and property, particularly in but not limited to these isolated areas, duly commissioned wildlife officers and agents of the enforcement division ... shall, in addition to the authority otherwise conferred by law upon such officers, be vested with the same authority and powers conferred by law upon other law enforcement officers of this state[.] La.R.S. 56:55.2(A).
The exclusive control of the shrimp fishery and the shrimp industry in Louisiana is vested in the [Department of Wildlife and Fisheries], which shall enforce the laws regulating same. All shrimp or parts thereof taken, possessed, or transported contrary to the provisions of this Subpart shall, when found, be confiscated and disposed of by the department at its discretion.... La.R.S. 56:493.
No trawling shall be permitted in inside waters during the closed season.... La. R.S. 56:495.1(A)(1).
The above statutes clearly indicate that Agent Matassa had the statutory authority to investigate an alleged violation of laws regulating the shrimping industry. Thus, we need only decide whether the trial court correctly decided that he acted reasonably and in good faith, within the confines and color of his office as a wildlife and fisheries agent. If so, Agent Matassa is entitled to the immunity granted by La.R.S. 56:65.
The trial court reached the conclusion that Agent Matassa's actions were reasonable after hearing conflicting testimony from several witnesses. The reasons specifically indicate that the trial court's judgment depended heavily on the credibility of the witnesses. Credibility determinations are subject to the strictest deference and the manifest error-clearly wrong standard demands great deference for the trier of fact's findings. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was a reasonable one. The reviewing court may not disturb *991 reasonable evaluations of credibility and reasonable inferences of fact when viewed in light of the record in its entirety even though it feels its evaluations are more reasonable. Theriot v. Lasseigne, 93-2661, p. 9 (La. 7/5/94); 640 So.2d 1305, 1313.
Further, whether a law enforcement officer has complied with the reasonable cause standard in making a warrantless arrest is a substantive determination to be made by the trial court from the facts and circumstances of each case. Moresi v. Department of Wildlife and Fisheries, 552 So.2d 1259, 1264 (La.App. 3d Cir.1989), rev'd on other grounds, 567 So.2d 1081 (La.1990); See State v. Drew, 360 So.2d 500, 510 (La. 1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979).
In its reasons for judgment, the trial court stated that it "was impressed by the testimony of Captain Matassa and feels that it represents more closely what actually transpired concerning the arrest." Having thoroughly reviewed the record, we find that the trial court did not commit manifest error in finding that Agent Matassa acted reasonably and in good faith within the confines and color of his office as a wildlife and fisheries agent. Therefore, we also find that the trial court was correct in applying La.R.S. 56:65 and dismissing plaintiffs' suit against the defendants.

DECREE
For the foregoing reasons, the judgment of the trial court in favor of the defendants and against the plaintiffs is AFFIRMED at plaintiffs' cost.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] A certificate of service attached to the end of defendants' pretrial memorandum indicated that a copy of the memorandum was served "upon all counsel of record, by depositing a copy of same in the United States Mail, postage prepaid and properly addressed, and by facsimile this 3rd day of August, 1993[,]" and was signed by defendants' counsel.