laCARL A. GUIDRY, Judge Pro Tern.
Defendants, Department of Wildlife and Fisheries (“department”) and Robert Daigle (“Daigle”), appeal the trial court’s judgment, finding Daigle to be at fault in causing the accident of July 1, 1993, and awarding plaintiffs, Chet Williams (“Chet”) and Clinton Williams (“Clinton”), damages. Plaintiffs answered the appeal, seeking an increase in the damage award, punitive damages and a determination of the applicability of La.R.S. 56:65 to this matter.
FACTS
Daigle is an agent for the department.’ On July 1, 1993, he and fellow agents, Travis Burnett (“Burnett”) and Chris Webb (“Webb”), were patrolling by boat an area in St. Mary Parish. Daigle, who was alone in a separate boat, and Burnett and Webb, stopped plaintiffs whom they had seen raising crab traps.[2] In the process of checking plaintiffs’ licenses, the agents noticed that crab crates in the boat contained undersized crabs.
Daigle testified that he was in the process of writing a citation for the possession of undersized crabs when his boat drifted away from plaintiffs’ boat which was being held by Burnett and Webb. While drifting away from the other boats, Daigle heard Chet use abusive and threatening language, some of which was directed at him. Therefore, Dai-gle stated that Chet was under arrest[3] and *1021 began to return to plaintiffs’ boat. As Daigle returned and approached plaintiffs’ boat, he looked and reached down to move a night stick that was located on the floor of his boat. When Daigle looked up, he was next to plaintiffs’ boat. Before Daigle could react, his boat rode over the gunnel of plaintiffs’ boat, striking Chet and causing Clinton to fall. Chet was later arrested and cited for possession of undersized crabs and public intimidation.
1 gChet and Clinton received medical treatment for injuries which they assert were caused by the accident.[4] After a bench trial, the court found Daigle at fault, and condemned Daigle and the department to pay for plaintiffs’ damages. However, the court specifically found that Daigle was not grossly negligent.
APPLICABILITY OF LOUISIANA REVISED STATUTE 56:65
Defendants argue that they are immune from liability by virtue of La.R.S. 56:65, which provides, in pertinent part:
A. Neither the department [Wildlife and Fisheries] nor any enforcing officer, agent, or other employee of the department shall incur any liability whatsoever for any search, arrest, seizure, or other act done by him in the. good faith performance of his duties under this Chapter.
In their brief, plaintiffs assert that maritime law applies to this ease and accordingly, if La.R.S. 56:65 were applied to this case, it would singularly change the maritime substantive law. Specifically, plaintiffs contend that “[La.R.S. 56:65’s] attempt at qualified immunity fails under federal principles of maritime law.” Inherent in this contention is plaintiffs’ recognition that La.R.S. 56:65 is a qualified immunity statute.
State legislation cannot be valid if it works material prejudice to the characteristic features of general maritime law. Southern Pacific Company v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917). However, we note that the defense of qualified immunity has been applied by federal courts to maritime tort claims against enforcement agents. See Harrell v. United States, 875 F.2d 828 (11th Cir.1989). Thus, assuming this is a maritime case, we find that La. R.S. 56:65 does not work material prejudice to the characteristic features of general maritime law. Accordingly, we must address the defendants’ entitlement to the qualified immunity granted by La.R.S. 56:65.
The trial court found that La.R.S. 56:65 was not applicable because the statute only applies when an agent is effecting a search, arrest, seizure or other enforcement action and acting in good faith, and the liability would be for a violation of one’s constitutional or civil rights. The trial court found that the accident was simply a result of Daigle’s unsafe handling of his boat, and thus, defendants were not entitled to immunity.
l4At issue in this appeal is the interpretation of a statute that grants to the department and its agents immunity from liability for any searches, arrests, seizures and other acts done in the good faith performance of their duties. In the present ease, even assuming the agents were involved in a search, arrest, seizure or other act performed in accordance with their official duties,[5] we affirm the trial court’s ultimate conclusion that the agents are not entitled to immunity under La.R.S. 56:65.
The applicability of the qualified immunity granted by La.R.S. 56:65 has been addressed by this circuit in Theriot v. State of Louisiana, Department of Wildlife and Fisheries, 94-1536 (La.App. 1st Cir. 4/7/95), 661 So.2d 986, writ denied, 95-1617 *1022 (La.10/6/95), 662 So.2d 1041. Specifically, this court recognized that the immunity granted by La.R.S. 56:65 was applicable if the agent “acted reasonably and in good faith, within the confines and color of his office as a wildlife and fisheries agent.” Theriot, 661 So.2d at 990 (emphasis added). While this court in Theriot went on to grant the agents immunity, when the same test is applied to the present facts, a different result is warranted.[6] We conclude that agent Dai-gle’s “conduct” was not reasonable. This “conduct” consisted of Daigle taking his eyes off of the path of travel in front of him while Ishis boat was in forward motion in order to move a night stick located on the floor of the boat. He testified that he was moving the night stick for the protection of himself and plaintiffs. However, he chose to take this specific action at a time when he knew that two other boats were in close proximity to his and one of the boats contained other agents who were available to assist him in apprehending the plaintiffs if this became necessary. We conclude that this conduct, which resulted in Daigle’s boat running upon the plaintiffs’ boat, was not reasonable. Consequently, neither he nor the department are immune from tort liability in the present ease.
However, this finding that Daigle was not acting reasonably, so as to entitle him to immunity, does not constitute a finding that he was grossly negligent. Thus, it does not affect the trial court’s denial of punitive damages.
Plaintiffs argue that they are entitled to punitive damages. Under Louisiana law, a plaintiff has no cause of action for punitive damages except where authorized by statute. Edmonds v. Boh Bros. Construction Co., 522 So.2d 1166, 1167 (La.App. 4th Cir.1988). However, plaintiffs argue that maritime law is applicable to their claim.
Assuming the maritime law is applicable to plaintiffs’ claim, punitive damages are available under the general maritime tort law and may be recovered when a wrongdoer has acted willfully and with reckless, callous or gross disregard for the plaintiffs rights or when the conduct shows gross negligence. In re Complaint of Merry Shipping, Inc., 650 F.2d 622, 625 (5th Cir.1981); Edmonds, 522 So.2d at 1167. Punitive damages are disfavored. Creamer v. Porter, 754 F.2d 1311, 1319 (5th Cir.1985). Gross negligence has been defined by Louisiana courts as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise, or an extreme departure from ordinary care.” Trondsen v. Irish-ltalian Parade Committee, 95-28 (La.App. 5th Cir. 5/10/95), 656 So.2d 694, 696, writ denied, 95-1467 (La. 9/22/95), 660 So.2d 476 (quoting Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La. 7/5/94), 639 So.2d 216, 219).
*1023 The trial court concluded that the actions of Daigle, while constituting negligence, did not amount to gross negligence. This is a finding of fact by the trial court which is entitled to great weight on appeal. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); | eArceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). While it is clear that Daigle was negligent under the specific facts of this case, we cannot say that this negligence constitutes gross and wanton negligence or an action done willfully and with gross disregard for the plaintiffs’ rights. Accordingly, in light of the trial court’s vast discretion, we cannot say that the trial court was clearly wrong in finding that Daigle was not grossly negligent.[7] Consequently, plaintiffs are not entitled to an award of punitive damages.
QUANTUM
Chet argues that the trial court erred in its award of general and special damages. He argues that the general damage award and the award for past lost earnings and future lost earnings should be increased. Clinton complains that the trial court’s awards to him for physical pain and suffering, past lost earnings and future lost earnings were inadequate.

General Damages

In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury. Andrus v. State Farm, Mutual Automobile Insurance Company, 95-0801 (La. 3/22/96), 670 So.2d 1206, 1210. The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court. Andrus, 670 So.2d at 1210; Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Only if the reviewing court determines that the trial court has abused its much discretion may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion. Andrus, 670 So.2d at 1210; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976).
Because discretion vested in the trial court is great, and even vast, an appellate court should rarely disturb an award of general damages. Andrus, 670 So.2d at 1210; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert, denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L:Ed.2d 379 (1994). Reasonable persons frequently disagree pabout the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Andrus, 670 So.2d at 1210; Youn, 623 So.2d at 1261. This rationale applies to appeals by defendants as well as to appeals by plaintiffs. Andrus, 670 So.2d at 1210.
When reviewed under the foregoing standards, the trial court’s general damage award of $55,000.00 to Chet does not constitute a clear abuse of the trial court’s vast discretion. Nor do we find that the trial court’s award of $25,000.00 to Clinton for physical pain and suffering[8] was a clear abuse of its great discretion.

Special Damages

A reviewing court should not set aside an award of special damages unless an analysis of the facts and circumstances reveals an abuse of discretion in setting the award. Stevens v. Winn-Dixie of Louisiana, 95-0435 (La.App. 1st Cir. 11/9/95), 664 So.2d 1207, 1214. Moreover, awards for loss of earning capacity are inherently speculative and are intrinsically incapable of being calculated with mathematical certainty. An appellate court must exercise sound discretion *1024 in reviewing such awards. Thomas v. State, Department of Transportation and Development, 27,203 (La.App. 2d Cir. 10/12/95), 662 So.2d 788, 796; Wisner v. Illinois Central Gulf Railroad, 587 So.2d 740, 751 (La.App. 1st Cir.1988), writ denied, 540 So.2d 342 (La.1989). In a case where the damages are subject to uncertainty and speculation, all the more deference should be paid to the trial court’s decision. Broussard v. Delchamps, Inc., 571 So.2d 855, 860 (La.App. 3d Cir. 1990), writ denied, 575 So.2d 370 (La.1991).
Plaintiffs, Chet and Clinton, both argue that the trial court’s award for their respective past lost earnings and future lost earnings should be increased. However, our analysis of the facts and circumstances does not reveal an abuse of discretion in setting these awards.
Each party submitted the testimony of an expert to address the amount of damages that should be awarded for lost earning capacity, past and future. The plaintiffs’ I ^expert utilized a different method of calculating the plaintiffs’ wage bases and assumed longer work lives than did the defendants’ expert. This resulted in the plaintiffs’ expert arriving at higher figures for the lost wage element of damages. Where the testimony of expert witnesses differ, it is for the trier of fact to determine the most credible evidence, and a finding of fact in this regard will not be overturned absent manifest error. Opelou-sas Production Credit Association v. B.B. & H., Inc., 587 So.2d 812, 814 (La.App. 3d Cir.1991); see Lirette v. State Farm Insurance Company, 563 So.2d 850, 853 (La.1990).
The trial court chose to accept the methods used and the range of figures calculated by defendants’ expert in awarding loss of past and future earnings. The awards, with the exception of Clinton’s award for lost future earnings,[9] were within the ranges of calculations presented by defendants’ expert. However, all of these awards are supported by the record. Thus, we find no abuse in the trial court’s great discretion in determining the award of lost earnings, past and future. Reck, 373 So.2d at 501; cf. Pino v. Gauthier, 633 So.2d 638, 658 (La.App. 1st Cir.1993), writs denied, 94r-0243 and 94-0260 (La. 3/18/94), 634 So.2d 858 and 859.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be shared equally between the parties.
AFFIRMED.

. All three agents testified that it was part of their duties as enforcement officers with the department to check fishermen's licenses and the sizes of their catch.

.Chet denied hearing Daigle say he was under arrest before Daigle re-approached plaintiffs' *1021 boat. However, he admitted that he knew he was under arrest at this time through Burnett.

. Chet sustained soft tissue injuries to his back and thoracic spine and underwent carpel tunnel surgery on both wrists as a result of the accident. Clinton sustained soft tissue injuries to his neck and low back, muscular injury to his right shoulder and snapping scapula syndrome in his left shoulder. The record reveals that both Chet and Clinton were experiencing only intermittent pain from their soft tissue injuries at the time of trial.

. In its brief, the department argues that Theriot entitles Daigle to the immunity granted by La. R.S. 56:65. We disagree.
Theriot involved a claim for false arrest and personal injury that occurred during the process of the arrest. There was conflicting testimony in Theriot regarding how the injury to the plaintiff occurred. According to the plaintiff and his witnesses, he was injured when an agent kicked his feet apart during the pat down. Plaintiff and one of his witnesses further testified that this action by the agent caused plaintiff to fall forward. The arresting agent testified that he spread the plaintiff's legs apart with his hands during the pat down and that plaintiff did not fall forward. One of plaintiff's other witnesses did not see the alleged fall. Thus, in Theriot, there was a factual dispute about the injury-causing event. The trial court, giving greater weight to the testimony of the defendants, and without distinguishing between the false arrest and personal injury claims, concluded " '[the agent] was acting reasonably and in good faith within the confines and color of his office as a wildlife and fisheries agent,' and thus, was entitled to immunity under La.R.S. 56:65.” Theriot, 661 So.2d at 989.
On appeal, the questions for this court involved the reasonableness of the actions of the agent and whether his actions caused the injuries to plaintiff. Theriot, 661 So.2d at 987. This court concluded that the trial court's decision to give greater weight to the defendants' version of the injury-causing event was not an abuse of discretion, and, as described by the defendants, the trial court's conclusion that the agent acted reasonably and in good faith, entitling him to immunity, was not manifestly erroneous. Theriot, 661 So.2d at 991. This court did not determine whether the agent would have acted reasonably and in good faith if the plaintiff's version of the injury-causing event would have been given more weight. Thus, we find the facts in Theriot distinguishable from the facts in the present case.

. Plaintiffs do not clearly acknowledge that, at the time of the accident, Daigle was effecting a search, arrest, seizure or other act performed in accordance with his official duties.

. Because we conclude the trial court was not clearly wrong in finding that Daigle's conduct did not amount to gross negligence, and because we previously found that La.R.S. 56:65 does not work material prejudice to the characteristic features of general maritime law, we need not consider whether the plaintiffs have a claim under the maritime law.

. Clinton dismissed his claim for mental pain and suffering near the close of the trial.

. The trial court found that Clinton was capable of returning to minimum wage employment for 30 hours a week and awarded him $32,700.00 in lost future wages. Defendants' expert gave a range of $2,200.00 to $3,100.00 for this damage element, assuming Clinton returned to minimum wage work on a full-time basis.