69 So.3d 658 (2011)
SCHOOLHOUSE, INC. and Eight Balls, Inc.
v.
Barry FANGUY.
No. 2010 CA 2238.
Court of Appeal of Louisiana, First Circuit.
June 10, 2011.
*659 Joseph J. Weigand, Jr., Houma, LA, for Plaintiff/Appellee, Schoolhouse, Inc. and Eight Balls, Inc.
Dennis John Hauge, Prairieville, LA, for Defendant/Appellant, Barry Fanguy.
Before WHIPPLE, McDONALD, and McCLENDON, JJ.
WHIPPLE, J.
This matter is before us on appeal by defendant, Barry Fanguy, from a judgment of the trial court rendered in favor of plaintiffs, Schoolhouse, Inc. and Eight Balls, Inc. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
On September 21, 1973, Schoolhouse, Inc. entered into a lease with Nelo Hebert for a certain lot of ground with a camp house located thereon in Point-Aux-Chene, Louisiana, for a term of forty-nine years. The lease, which was issued on a yearly basis, was renewable on March 1, 1974, and each year thereafter, for the sum of $400.00 per year. Likewise, on November 4, 1973, Eight Balls, Inc. entered into a lease with Nelo Hebert for an adjacent parcel of land with a camp house located thereon for a period of fifty years. This lease was also renewable on March 1st of each year at the sum of $350.00 per year.[1] In 1995, the Hebert family sold the leased property to Barry Fanguy and his brother, Todd Fanguy. In 1997, Todd sold his interest in the property to Barry Fanguy, making him the sole owner of the property.
*660 On June 26, 2007, Schoolhouse and Eight Balls filed a petition for damages citing numerous incidents of interference with and obstruction of their use of the camps and destruction of the leased property by Barry Fanguy in an effort to force or cause plaintiffs to give up their leases, which had occurred over the course of several years since Fanguy's initial purchase of the property in 1995. Specifically, plaintiffs contended that Fanguy's actions constituted intentional breaches of the leases and that plaintiffs were entitled to recover for their loss of the use and enjoyment of the property and for the economic value of the loss of such use. Plaintiffs further alleged that Fanguy should be held answerable in damages for the full amount of such damages and loss of use in an amount to be determined by the trial court as reasonable. These alleged breaches included, inter alia, Fanguy's interference with the sewerage system causing improper sewerage drainage, as well as interference with the drainage on the property, causing ongoing and continuous flooding. Plaintiffs further sought to be restored to the full extent of possession of the leased premises, and to have Fanguy ordered to remove various improper objects, camps, shells, fill, and other material placed by him on the property that interfered with the drainage and sewerage. Finally, plaintiffs sought a mandatory and permanent injunction against Fanguy ordering him to remove various objects placed on the leased property and to restore it to the condition it was in prior to his violations of the lease, and that Fanguy be enjoined from impeding or interfering in any way with plaintiffs' use of the leased property.
On August 13, 2007, Fanguy filed an answer and reconventional demand. In his reconventional demand, Fanguy contended that Schoolhouse, Inc. and Eight Balls, Inc., as defendants-in-reconvention, had breached the terms of the lease agreements by failing to keep the premises in reasonable repair, thereby entitling Fanguy, as plaintiff-in-reconvention, to a rescission of the lease and a judgment declaring the lease terminated and no longer in effect and ordering the occupants evicted. Fanguy further sought damages for the lessees' alleged failure to keep the leased premises in reasonable repair.
The matter was heard before the trial court on November 9, 10, and 12, 2009. At the conclusion of trial, the parties submitted posttrial briefs and on March 3, 2010, presented closing arguments to the trial court. On June 1, 2010, the trial court rendered judgment in favor of plaintiffs and against Fanguy. The trial court specifically incorporated the following findings in its actual judgment:
The Court finds that the testimony of the individual members of the plaintiff corporations, Schoolhouse, Inc., and Eight Balls, Inc., is particularly credible. They are each LSU professors who carefully selected Terrebonne Parish for periods of fun, rest and relaxation. They had little once the defendant, Barry Fanguy, purchased the property from their original lessor. Because of Mr. Fanguy's conduct detailed below, petitioners found the southern end of Terrebonne Parish to be a far cry from a sportsman's paradise they'd hoped to enjoy. The professors gave detailed accounts of their ongoing challenges with Barry Fanguy. They also maintained meticulous, detailed written accounts of the damages to the camps and their expenditures to repair same, over the course of the fifteen year-period involved in this lawsuit. In contrast, the Court finds the testimony of Barry Fanguy as self-serving, contradictory, and not credible. Mr. Fanguy was also *661 openly hostile and belligerent on the stand.
The Court finds that Barry Fanguy, individually and through his agents/employees, did intentionally, willfully, perhaps even criminally, and certainly in bad faith, interfere with the petitioners' peaceable possession of their leased premises. He did so by committing a multitude of nefarious acts over a time span of approximately fifteen (15) years. His misconduct included, but was not limited to, destroying camp fencing multiple times; creating a "levee system" around the leased premises, causing substantial interference with the property's natural drainage; storing movable equipment and supplies upon the leased grounds for years without obtaining the lessees' consent; permitting third parties to park upon the leased premises; repeatedly breaking down camp doors and shattering camp windows; initiating groundless eviction proceedings; and calling upon law enforcement officers, parish officials, and attorneys, without reason. He admitted to these improprieties and more when the parties met at the Schoolhouse camp on or about June 30, 2006.
Given all of the foregoing, the Court finds that under the facts and circumstances of this case, Barry Fanguy's conduct amounts to a breach of and tortious interference with the written leases. The Court also finds sufficient grounds to issue a permanent injunction against Barry Fanguy and to require Mr. Fanguy to post a substantial bond to insure the lessees' future peaceable possession of the leased premises. The Court also finds that under the facts of this case, the petitioners are entitled to actual damages, general damages and attorney's fees.
In accordance with these findings, the trial court then awarded damages and ordered other relief in favor of Schoolhouse and Eight Balls, as follows:
1. General damages in the sum of $25,000.00 to Schoolhouse as compensation for Fanguy's tortious interference with the written leases and for the resulting mental anguish, humiliation, aggravation and inconvenience to its camp members, plus interest;
2. General damages in the sum of $25,000.00 to Eight Balls as compensation for Fanguy's tortious interference with the written leases and for the resulting mental anguish, humiliation, aggravation and inconvenience to its camp members, plus interest;
3. Attorney's fees in the sum of $3,000.00 to Schoolhouse and $3,000.00 to Eight Balls for the fees incurred in their retention of attorney Bob Butler to defend against Fanguy's wrongful 1995 eviction proceeding brought in the City Court of Houma;[2]
4. Attorney's fees in the amount of $10,000.00 to plaintiffs for the fees incurred in their retention of attorney Joseph Weigand to vindicate the contractual breaches and wrongs enumerated by the trial court and to secure their right to future peaceable possession and enjoyment of the leased premises;
5. That a permanent injunction immediately issue against Fanguy to prevent further interference by him, *662 individually or through his agents/employees, with the lessees' peaceable possession of the leased premises;
6. That Fanguy immediately post a $500,000.00 bond to ensure his compliance with the permanent injunction, with the bond to be forfeited should there be any violation by Fanguy of the permanent injunction;
7. That Fanguy immediately remove any and all movable and immovable property from the leased premises, which he, individually or through his agents, placed upon the leased premises without the lessees' consent;
8. That Fanguy remove "forthwith" the levee he built around the leased premises and grade the leased premises to restore the natural flow of rainwater; repair broken water lines going to the camps; repair the sewer systems for each camp; and erect a fence around the leased premises with gates to allow automobiles and people entrance to the property, all of which work is to be approved by a civil engineer selected by plaintiffs and whose fees shall be prepaid by Fanguy;
9. That all costs be taxed to Fanguy.
The trial court further adopted plaintiffs' post-trial memorandum and amended proposed findings of fact and conclusions of law as further reasons for judgment.
On June 16, 2010, Fanguy filed a petition for a suspensive appeal from the June 1, 2010, judgment of the trial court. The trial court entered an order of appeal and set a bond at $66,000.00. Fanguy then filed a "Power of Attorney," dated June 23, 2010, as a purported satisfaction of his obligation to furnish a suspensive appeal bond to perfect his suspensive appeal. On July 13, 2010, plaintiffs filed a rule to show cause why the appeal bond should not be deemed insufficient/invalid and why the suspensive appeal should not be set aside, contending that the power of attorney submitted by Fanguy as security for the suspensive appeal was meaningless and legally insufficient. Thereafter, Fanguy filed a cash bond in the amount of $66,000.00, which the trial court initially ordered be substituted for the previously filed power of attorney as security for the suspensive appeal. After a hearing on plaintiffs' rule, however, the trial court determined that as a mere power of attorney, Fanguy's filing did not meet the criteria for a judicial bond pursuant to LSA-C.C.P. arts. 5121, et seq. Thus, the subsequently filed cash bond could not relate back to cure any defects and perfect a suspensive appeal as there was no "bond" to cure. Accordingly, the trial court set aside the suspensive appeal and converted the instant appeal to a devolutive appeal.[3]
Fanguy appeals, contending that the trial court erred: (1) in finding that he had disturbed the peaceable possession of plaintiffs; (2) in failing to render a ruling and decision on the reconventional demand for eviction; and (3) in converting the instant appeal to a devolutive appeal.

DISCUSSION

Assignment of Error Number One
In Fanguy's first assignment of error, he contends that the trial court erred in finding as a fact that he disturbed the plaintiffs' peaceable possession of the leased property. Thus, in this assignment of error, Fanguy essentially challenges the *663 factual findings and credibility determinations made by the trial court.
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The Louisiana Supreme Court has announced a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). See also Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, through Department of Transportation and Development, 617 So.2d at 882. Where factual findings are based on determinations regarding the credibility of witnesses, the trier of fact's findings demand great deference. Boudreaux v. Jeff, 2003-1932 (La.App. 1st Cir.9/17/04), 884 So.2d 665, 671; Secret Cove, L.L.C. v. Thomas, 2002-2498 (La.App. 1st Cir.11/7/03), 862 So.2d 1010, 1016, writ denied, 2004-0447 (La.4/2/04), 869 So.2d 889. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d at 844.
In support of their petition, plaintiffs called several members of Schoolhouse and Eight Balls to testify. These members recounted numerous incidents involving repeated acts of interference and acts of intimidation by Fanguy, which plaintiffs had documented as they occurred and which were noted by the trial court in its written reasons. Plaintiffs also called representatives from the Department of Health and Hospitals, Office of Public Health, as well as a parish building inspector and representative from the U.S. Army Corps of Engineers Regulatory Branch to testify regarding the events giving rise to plaintiffs' lawsuit.
After hearing the testimony of several witnesses, who kept written records regarding Fanguy's actions, the incidents at issue and photographs, which were introduced into evidence, the trial court concluded that Fanguy had engaged in a course of conduct that interfered with plaintiffs' peaceable possession of the leased property. The trial court also heard and rejected. Fanguy's testimony. Notably, the trial court's written reasons specifically indicate that the trial court's judgment depended heavily on the credibility of the witnesses. In rendering judgment, the trial court noted that it found the testimony of the various plaintiff-members "particularly credible," while the testimony of Fanguy was found to be "self-serving, contradictory, and not credible." Moreover, the trial court rejected Fanguy's explanations, noting that Fanguy was also "openly hostile and belligerent on the stand."
Considering that credibility determinations are subject to the strictest deference, that the manifest error-clearly wrong standard demands great deference for the trier of fact's findings and that where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong, Theriot v. State, Department of Wildlife and Fisheries, 94-1536 (La.App. 1st *664 Cir.4/7/95), 661 So.2d 986, 990-991, writ denied, 95-1617 (La.10/6/95), 662 So.2d 1041, we find no error. Instead, after thoroughly reviewing the entire record herein, including the transcript of the three-day trial held in this case and the conflicting testimony presented, we find no error in the factual findings or the judgment rendered by the trial court, which were clearly based on the court's credibility determinations. Moreover, we find the record overwhelmingly supports the determination of the trial court that Fanguy interfered with plaintiffs' peaceable possession of the leased property.
Accordingly, we find no merit to this assignment of error.

Assignment of Error Number Two
In Fanguy's second assignment of error, he contends that the trial court erred in failing to "render a ruling and decision" on his reconventional demand. Generally, silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. Hayes v. Louisiana State Penitentiary, 2006-0553 (La. App. 1st Cir.8/15/07), 970 So.2d 547, 554, n. 9, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758.
The transcript herein reflects that Fanguy's reconventional demand was taken up or placed before the trial court in the proceedings below. Although the judgment of the trial court did not specifically state that Fanguy's reconventional demand was denied, given the trial court's ruling on the main demand, the trial court clearly considered and rejected Fanguy's reconventional demand, by refusing to order the eviction of the plaintiffs and the other relief sought by Fanguy therein.
Thus, this assignment of error also lacks merit.

Assignment of Error Number Three
In Fanguy's final assignment of error, he contends that the trial court erred in finding that the Power of Attorney was not an "insufficient" or "invalid" bond for which defects therein could be cured within four days pursuant to LSA-C.C.P. art. 5124.[4]
In converting the instant appeal to a devolutive appeal, the trial court determined that the mere "Power of Attorney" filed by Fanguy was not, in fact or law, a suspensive appeal bond at all, and that the cash bond subsequently filed by Fanguy was not timely filed pursuant to LSA-C.C.P. art. 2123.[5] In doing so, the trial court relied on Guilliot v. City of Kenner, *665 326 So.2d 359, 363 (La.1976), where the Supreme Court noted:
If what purports to be a bond complies substantially with the requirements of the law, objections as to its form, substance or sufficiency are properly resolved by the trial court, which retains jurisdiction for that purpose as of the date of its filing or subsequently. La. Code of Civ. P. art 2088. The trial court is authorized to cure these objections. La.Code of Civ. P. arts. 5123, 5124, 5125.
On the other hand, if what purports to be a bond is nothing but blank unsigned paper it cannot be cured and it does not meet the requirements of a bond. The filing of such a document is not a `timely filing' of security which gives jurisdiction to an appellate court. Gagneaux v. Desonier, 104 La. 648, 29 So. 282 (1901); Durrett Hardware & Furniture Co., Inc. v. Howze, 174 So. 205 (La.App. 1937). This was the situation in the instance case. The purported bond did not substantially comply and could not be cured. To give effect to a document purporting to be an appeal bond which does not bind the surety would render Articles 5121, 5122 and 2124 of the Code of Civil Procedure meaningless.
Nor did the tardy filing of a properly executed bond on April 16, 1975, long after the expiration of the delays for appeal, have the effect of curing a purported bond which could not be cured. Article 5124 of the Code of Civil Procedure contemplates the curing of insufficient and invalid bonds, it does not provide for curing documents which are no bonds at all. (Emphasis added).
After careful review and considering the above legal precepts and jurisprudence, we find the trial court correctly determined that a Power of Attorney filed by Fanguy could not be cured as this filing did not bond any surety or meet the requirements of a suspensive appeal bond. Accordingly, we find no error in the trial court's determination that Fanguy failed ab initio to post a bond and to convert the appeal to a devolutive appeal.
This assignment also lacks merit.

CONCLUSION
Based on the above and foregoing reasons, the June 1, 2010 judgment of the trial court is hereby affirmed. Costs of this appeal are assessed against the defendant/appellant, Barry Fanguy.
AFFIRMED.
McCLENDON, J., dissents in part, agrees in part, and assigns reasons.
McCLENDON, J., dissents in part, agrees in part, and assigns reasons.
Louisiana Code of Civil Procedure article 5124 requires that before an appeal is dismissed for a defect in the bond the appellant must have the opportunity to correct it by furnishing a new or supplemental bond. The purported bond filed in this case was issued in favor of Barry Fanguy, referenced the case number in the underlying district court proceedings, reflected a bond amount of $66,000 (as set by the trial court), and was signed on behalf of the bonding company by an executing agent and senior vice president. Although the bond may have been defective, the document was not merely a blank piece of paper without any binding consequences, and appellant should have been afforded the opportunity to correct the defect. I agree with Justice Tate's dissent in Guilliot v. City of Kenner, 326 So.2d 359, 364, wherein he recognized that the court had "disregarded the unambiguous code of civil procedure articles . . . preventing dismissal of appeals without an opportunity to correct or replace technically inadequate *666 appeal bond forms." Therefore, I respectfully dissent to the extent that the majority concludes that the bond at issue could not be cured. I agree in all other respects.
NOTES
[1] Schoolhouse, Inc. and Eight Balls, Inc. were incorporated groups whose members primarily consisted of retired professional men who used the property and camps thereon as fishing camps.
[2] After Fanguy purchased the leased property, he filed an eviction proceeding in the City Court of Houma in an attempt to have plaintiffs evicted from the leases. The eviction proceedings were dismissed by the City Court Judge. Nonetheless, plaintiffs were forced to retain legal counsel to defend the proceedings in City Court.
[3] We note that Fanguy does not challenge the specific amount of damages awarded or the award of attorney's fees on appeal.
[4] Louisiana Code of Civil Procedure article 5124 provides:

Within four days, exclusive of legal holidays, of the rendition of judgment holding the original bond insufficient or invalid, or at any time if no rule to test the original bond has been filed, the party furnishing it may correct any defects therein by furnishing a new or supplemental bond, with either the same surety if solvent, or a new or additional surety.
The new or supplemental bond is retroactive to the date the original bond was furnished, and maintains in effect the order, judgment, writ, mandate, or process conditioned on the furnishing of security.
The furnishing of a supplemental bond, or the furnishing of a new bond by a different surety, does not discharge or release the surety on the original bond; and the sureties on both are liable in solido to the extent of their respective obligations thereon and may be joined in an action on the bond.
[5] Louisiana Code of Civil Procedure article 2123 provides that the delay for taking a suspensive appeal and furnishing security therefor is within thirty days of the expiration of the delay for applying for a new trial or judgment notwithstanding the verdict.