WHIPPLE, J.
|2In this workers’ compensation matter, the Louisiana Safety Association of Tim-bermen (“LSAT”) and Bell Carpentry Works[1] appeal from a judgment of the Office of Workers’ Compensation (“OWC”) finding that defendant, Ernest Carlton, Jr. (“Carlton”), sustained a compensable injury to his back on December 8, 2008, while employed at Bell Carpentry Works and awarding benefits accordingly. Carlton filed an answer to the appeal.
For the following reasons, we affirm the judgment of the OWC. The relief sought in the answer to appeal is denied.
FACTS AND PROCEDURAL HISTORY
Ernest Carlton was employed as a carpenter by Bell Carpentry Works performing home construction work. His duties included cutting plywood with a skill saw, nailing boards, “toting” boards, and pulling tape measures. On December 8, 2008, Carlton and two other workers lifted a twenty-foot-long beam that was being used to hold up rafters and joists on the front porch of a home. After Carlton assisted in picking the beam up from the saw horses, his two co-workers proceeded to take the beam up a ladder. When they arrived at the top of the ladder, the beam slipped and fell down, striking Carlton in the back. Carlton subsequently sought treatment for his lower back injuries and surgery was ultimately recommended.
Because Carlton had sustained a prior back injury for which surgery was also recommended, LSAT submitted a claim for recovery against the Second Injury Fund. After LSAT approved and paid for the surgery, Carlton underwent an L4-5 laminectomy with decompression of the L3 and L4 nerve roots, on |sDeeember 14, 2009. Carlton also received indemnity benefits from December 2008 to March 2011, as well as medical benefits, for this accident.
Despite its prior approval, on April 11, 2011, LSAT filed a disputed claim for compensation (Form 1008) contending that it had paid indemnity and medical benefits to Carlton arising from the December 8, 2008 work-related accident that were not due. As such, LSAT sought reimbursement from Carlton for all benefits paid for the December 8, 2008 accident and injury.
Carlton filed an answer and reeonven-tional demand contending that LSAT arbi *1080 trarily and capriciously terminated medical and indemnity benefits without properly investigating Carlton’s claim. Carlton further alleged that LSAT failed to provide proper and meaningful vocational rehabilitation and that its refusal was arbitrary and capricious.
The matter was tried heard before the OWC on December 1, 2011, after which the OWC judge signed a judgment on December 7, 2011, finding that:
(1)Carlton sustained a compensable injury to his back on December 8, 2008, while employed at Bell Carpentry Works;
(2) LSAT is not entitled to reimbursement of indemnity and medical benefits previously paid;
(3) Carlton’s average weekly wage is $517.50, with a corresponding compensation rate of $345.17;
(4) LSAT was obligated to pay Carlton temporary total disability benefits from March 25, 2011 through May 6, 2011 at the rate of $345.17 per week;
(5) LSAT was obligated to pay Carlton supplemental earnings benefits in the following amounts:
May 2011: $615.31
August 2011: $228.45
| .(September 2011: $461.90
October 2011: $395.20
November 2011: to be paid after submission of Form 1020
(6) LSAT was obligated to pay Carlton continuing monthly supplemental earnings benefits upon receipt of Form 1020;
(7) all indemnity awards listed above, including future supplemental earning benefits, were subject to a credit in favor of LSAT in the amount of $23,010.99, representing overpayments of temporary total disability benefits from December 9, 2008 through March 24, 2011;
(8) LSAT was obligated to pay Carlton $8,000.00 in penalties and $10,000.00 in attorney fees pursuant to LSA-R.S. 23:1201(1).
Carlton filed a motion for new trial, contending that evidence proffered by LSAT established different wage information that the OWC should have used to properly calculate Carlton’s average weekly wage. After a hearing, the OWC signed a judgment on January 25, 2012, denying the motion for new trial.
LSAT then filed the instant suspensive appeal from the OWC’s December 7, 2011 judgment on the merits. On appeal, LSAT sets forth the following assignments of error:
(1) The Workers’ Compensation Judge abused her discretion and committed error in striking appellants’ Pre-Trial Statement and precluding the employer from testifying.
(2) The Workers’ Compensation Judge committed error in finding that claimant sustained his burden of proving that his back injury, continuing back complaints and subsequent surgery were causally related to the December 8, 2008 accident.
(3) The Workers’ Compensation Judge committed error in concluding that the employee’s claim was compensa-ble despite the fact that the employee returned to work following a prior work related accident before MMI and before having been released by his treating physician and after settling his prior claim for a substantial sum.
| ⅞(4) The Workers’ Compensation Judge committed error in denying appel *1081 lants’ claim for full reimbursement of all benefits paid.
(5) The Workers!’] Compensation Judge abused her discretion in not strictly construing the penalty provisions of the Louisiana Workers’ Compensation Act and imposing penalties and attorney fees.
DISCUSSION
Assignment of Error Number One[2]
LSAT first contends that the OWC abused its discretion and committed error in striking LSAT’s pre-trial statement and precluding Carlton’s former employer, Jimmy Bell, from testifying.[3]
A trial judge has great discretion in conducting a trial. The judge is required to do so in an orderly, expeditious manner and to control the proceedings so that justice is done. LSA-C.C.P. art. 1631; Palace Properties, L.L.C. v. Sizeler Hammond, Square Limited Partnership, 2001-2812 (La.App. 1st Cir.12/30/02), 839 So.2d 82, 91, writ denied, 2003-0306 (La.4/4/03), 840 So.2d 1219. This discretion includes the admissibility of a witness’s testimony. Combs v. Hartford Insurance Company, 544 So.2d 583, 586 (La. App. 1st Cir.), writ denied, 550 So.2d 630 (La.1989). It is only upon a showing of a gross abuse of discretion that appellate courts have intervened. Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1st Cir.1993), write denied, 94-0243 and 94-0260 (La.3/18/94), 634 So.2d 858 and 859. The theory inherent in pretrial procedure is to avoid surprise and to allow orderly disposition of cases. Theriot v. State, Department of Wildlife and | ⅛Fisheries, 94-1536 (La.App. 1st Cir.4/7/95), 661 So.2d 986, 989, writ denied, 95-1617 (La.10/6/95), 662 So.2d 1041.
If a party objects to the offered testimony of a witness not listed on the pre-trial order, a trial judge has great discretion in deciding whether to receive or refuse the testimony objected to on the grounds of failure to abide by the rules, but any doubt must be resolved in favor of receiving the testimony. See Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d 568, 576 (La.App. 1st Cir.1989), writ denied, 558 So.2d 583 (La.1990). When a party has not satisfied the technicality of supplementing responses to interrogatories, the reviewing court can look to the record for a willful or negligent failure to disclose names of witnesses in determining whether the trial judge abused his discretion. Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d at 576. A party’s failure to cooperate after the discovery is made can color the final decision on admissibility. Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d at 576. On the other hand, an opponent with *1082 actual notice of the witness’s identity cannot wait to object to the testimony at trial merely for strategic purposes. If actual notice is acquired within a reasonable time, a party must seek some corrective action or the party will be deemed to have waived the right to object at trial. Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d at 576.
After two continuances, trial of the underlying matter was scheduled for December 1, 2011 and LSAT served its pretrial statement on Carlton by mail on November 11, 2011. On November 28, 2011, Carlton filed a motion to strike LSAT’s untimely pretrial statement. Therein, Carlton contended that pursuant to the OWC’s Scheduling Conference Order, the parties’ pretrial statements were due thirty days prior to the trial date. Carlton further contended that not only was 17LSAT’s pretrial statement tardy, but that LSAT’s pretrial statement, once received, failed to provide the specific name of any witness that it planned to call at trial other than Carlton.
LSAT excused its failure to identify the witnesses it intended to call to testify before trial by arguing that it listed “[a]ny and all other employees and representatives of BELL” and “[a]ny and all past or current employees of BELL, who have witnessed ERNEST CARLTON, JR. alleged work accident [sic] or who possess any information pertinent to this claim” in its tardy pretrial statement as potential witnesses. LSAT contends that Carlton did not “press” LSAT “for specific names of the employees or representatives who would be called to testify at trial.”
The OWC heard argument on the motion prior to trial and, in ruling on the motion to strike, noted:
Similarly, the witnesses. The only — I mean, I don’t have names of anybody, and I think that is very prejudicial to Mr. Reardon’s client because the only person listed by name is Ernest Carlton.
In other words, it’s a boilerplate witness list. And apparently from what you’re saying is there are witnesses out there that Mr. Reardon, you know, I guess I wasn’t aware of until this morning. So for those reasons, I will grant the Motion to Strike.
In the instant case, it is undisputed that LSAT’s pre-trial statement was untimely filed. Moreover, LSAT never provided Carlton with the identity of any witnesses; nor does the record demonstrate that Carlton had “actual knowledge,” via LSAT’s pre-trial statement or otherwise, that Jimmy Bell would be called to testify. Accordingly, considering the record and circumstances herein, we find the OWC acted within the vast discretion afforded to it in precluding Bell’s testimony. Cf Abdon Callais Boat Rentals, Inc. v. Louisiana Power and Light Company, 555 So.2d at 576-577; Palace Properties, L.L.C. v. Sizeler Hammond Square Limited Partnership, 839 So.2d at 90-92; Kinney v. Bourgeois, 2006-2384, 2006-2385, pp. 4-5 (La.App. 1st Cir.9/14/07), 2007 WL 2686113(unreported opinion), writ denied, 2007-2026 (La.1/7/08), 973 So.2d 730.
Thus, on review, we find no error or abuse of the OWC’s discretion in granting Carlton’s motion to strike. This assignment lacks merit.
Standard of Review
In a workers’ compensation ease, whether a claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the OWC. Authement v. Wal-Mart, 2002-2434 (La.App. 1st Cir.9/26/03), 857 So.2d 564, 570. Additionally, whether the refusal to pay benefits warrants the imposition of penalties and attorney fees is likewise a factual question. Crochet v. *1083 Barbera Chevy-Chrysler Company, Inc., 2004-1390 (La.App. 1st Cir.6/29/05), 917 So.2d 49, 53. Appellate review of the factual findings in workers’ compensation cases is governed by the manifest error or clearly wrong standard. Roberts v. Thibodaux Healthcare Center, 2005-0774 (La. App. 1st Cir.3/24/06), 934 So.2d 84, 91.
The two-part test for appellate review of facts is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court, and (2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, an appellate court may not set aside a trial court’s factual findings unless, reviewing the record in its entirety, it determines the trial court’s factual finding was clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993).
Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Lizana v. Gulf Coast Pain Institute, 2003-1672 (La.App. 1st Cir.5/14/04), 879 So.2d 763, 765. If the fact finder’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, Reven though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990). Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in the demeanor and tone that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).
Assignments of Error Numbers Two and Three
In these assignments, LSAT contends that the OWC committed error in finding that claimant sustained his burden of proving that his back injury, continuing back complaints, and subsequent surgery were causally related to the December 8, 2008 accident and in concluding that the employee’s claim was compensable despite the fact that the employee returned to work following a prior work-related accident before having reached MMI and having been released by his treating physician and after settling his prior claim.
An otherwise healthy employee with a preexisting condition is entitled to benefits if he can prove that his work contributed to, aggravated, or accelerated his injury. Hayes v. Louisiana State Penitentiary, 2006-0553 (La.App. 1st Cir.8/15/07), 970 So.2d 547, 556, writ denied, 2007-2258 (La.1/25/08), 973 So.2d 758. An employee’s work-related accident is presumed to have caused his disability when he proves that before the accident, he had not manifested his disabling symptoms; that commencing with the accident, disabling symptoms appeared; and that there is either medical or circumstantial evidence indicating 110a reasonable possibility of a causal connection between the accident and the disabling condition. Walker v. Halliburton Services, Inc., 93-722 (La.App. 3rd Cir.3/1/95), 654 So.2d 365, 369, unit denied, 95-1507 (La.9/22/95), 660 So.2d 481.
The parties do not dispute that Carlton had a previous low-back injury for *1084 which he treated with Dr. Henry L. Eiser-loh, an orthopedic surgeon. After conservative treatment, Dr. Eiserloh recommended surgery at the L4-5 levels for that injury. Nonetheless, as noted by Dr. Eis-erloh, Carlton declined the surgery and returned to work. Notably, Carlton remained asymptomatic until the December 8, 2008 accident herein.
After the December 8, 2008 accident, Dr. Eiserloh examined Carlton. Dr. Eis-erloh found that Carlton’s pain had worsened, that he had spasm with acute injury, that Carlton had some subtlety of extension of disc herniation, and that he had a definite worsening of his physical condition, which were shown by objective physical findings. Dr. Eiserloh found that the injuries sustained after the December 8, 2008 accident were an aggravation of Carlton’s pre-existing lumbar herniation with some extension of disc herniation. Accordingly, Dr. Eiserloh again recommended surgery at L4-5.
LSAT requested a second medical opinion in this case, which was provided by Dr. Scott G. Petrie, an orthopedic surgeon. Dr. Petrie examined Carlton on March 30, 2009, and likewise noted Carlton’s objective physical findings. After examining Carlton and reviewing his medical records, including x-rays and an MRI of the lumbar spine, Dr. Petrie agreed with Dr. Eiser-loh’s findings, noting: “We feel that in light of his symptoms, which started after this most recent accident at work and he had a period of over two years where he had no symptoms from his previous back treatment^] that this accident aggravated or worsened his condition.” (Emphasis added.)
Moreover, LSAT conducted a rehab conference with Dr. Eiserloh on August 13, 2010, in order to secure Second Injury Fund approval. At that time, Dr. Eiserloh opined that Carlton’s December 8, 2008 injury merged functionally with his preexisting lumbar herniated disc to create a greater disability “resulting in [the] need for L4/5 surgery.”
After a thorough review of the voluminous testimony and evidence of record herein, including the medical and expert testimony, given our standard of review, we find the OWC’s decision that claimant sustained his burden of proving that his back injury, continuing back complaints, and subsequent surgery were casually related to the December 8, 2008 accident to be reasonable and amply supported by the record. Thus, we find no error in the OWC’s findings and decline to upset the OWC’s findings regarding causation. Moreover, we further find the OWC correctly determined that Carlton proved that his December 8, 2008 accident contributed to, aggravated, or accelerated his preexisting injury, thus entitling him to benefits. See Hayes, 970 So.2d at 556.
These assignments lack merit.
Assignments of Error Numbers Four and Five
To the extent that LSAT contends that the OWC committed error in denying its claim for full reimbursement of all benefits paid, considering our finding that the OWC correctly determined that Carlton’s accident and injuries were casually related to the December 8, 2008 accident and that Carlton’s claim was compensable, we likewise find no merit to this assignment of error.
Moreover, we find no merit to LSAT’s final assignment of error (ie., that the OWC abused her discretion by failing to strictly construe the penalty provisions of the Louisiana Workers’ Compensation Act and imposing penalties and attorney fees). The medical evidence available to LSAT, including its own expert’s second-opinion evaluation, provided ample notice to LSAT *1085 that it was | ^obligated for such payments and treatment as causally related to the second accident and that its obligation was continuing. Moreover, given LSAT’s own actions vis-a-vis the Second Injury Fund, we find no error in the OWC’s rejection of LSAT’s claim that it acted reasonably in terminating benefits and refusing to pay or continue benefits and treatment lawfully owed and due.
These assignments also lack merit.
ANSWER TO APPEAL
Carlton filed an answer to this appeal, contending that the OWC erred in: (1) finding that his average weekly wage was $517.50 with a corresponding compensation rate of $345.17; (2) awarding supplemental earnings benefits for May 2011 in the amount of $615.31, August 2011 in the amount of $228.45, September 2011 in the amount of $461.90, and October 2011 in the amount of $395.20; and (3) finding that LSAT is entitled to a credit in the amount of $23,010.99. Further, Carlton sought additional attorney fees and interest necessitated by filing an answer in defense of this appeal.
Carlton began working for Bell Carpentry Works in November of 2008, making $20.00 per hour. Carlton testified that he was never guaranteed a 40-hour work week by his employer. Bell Carpentry Works’ payee report introduced by LSAT at trial show Carlton’s wages from the time of hire until the date of the accident herein, as follows:
11/13/08 $640.00 [32 hours]
11/20/08 $600.00 [30 hours]
11/28/08 $400.00 [20 hours]
12/5/08 $430.00 [21½ hours]
12/8/08 $300.00
Carlton explained that the check in the amount of $300.00 that he received on the date of the accident was given to him by his employer “to help pay for his medication.” Based on the prior four weeks of wages, the OWC calculated Carlton’s average weekly wage as $517.50, with a corresponding compensation |israte of $345.17. Because Carlton had been receiving a higher compensation rate of $546.36 a week, the OWC found that LSAT was entitled to a credit of $23,010.99.
Carlton contends in his answer to appeal that he was a full-time employee of Bell Carpentry Works and, as such, that his average weekly compensation should have been calculated with the presumption that he worked a forty-hour work week pursuant to LSA-R.S. 23:1021(12)(a)(i), and not that he worked regularly and at his own discretion less than forty hours per week pursuant to LSA-R.S. 23:1021(12)(a)(ii).[4]
The calculation of an employee’s average weekly wage is a factual finding subject to the manifest error-clearly wrong standard of review. Nitcher v. Northshore Regional Medical Center, 2011-1761 (La.App. 1st Cir.5/2/12), 92 So.3d 1001, 1013, writ denied, 2012-1230 (La.9/21/12), 98 So.3d 342. On review of *1086 the testimony and record in its entirety, we reject Carlton’s argument in the answer to appeal regarding his work with Bell Carpentry Works. Carlton presented no evidence whatsoever to rebut the evidence that the hours he worked 114were as recorded by his employer in its payee report introduced herein. As such, we find no error in the OWC’s computation of Carlton’s average weekly wage.
Moreover, considering our finding that the OWC did not err in its determination that Carlton was not a full-time employee, we find no error in the OWC’s awards of supplemental earnings benefits or its finding that LSAT is entitled to a credit in the amount of $23,010.99. Because we find no merit to the arguments set forth by Carlton in his answer to appeal, we decline to award Carlton additional attorney’s fees and interest.
Thus, the relief sought in the answer to appeal is denied.
CONCLUSION
For the above and foregoing reasons, the December 7, 2011 judgment of the OWC is hereby affirmed. The relief sought in the answer to appeal is denied. Costs of this appeal are to be assessed equally to Ernest Carlton, Jr. and the Louisiana Safety Association of Timber-men.
JUDGMENT AFFIRMED; RELIEF SOUGHT IN ANSWER TO APPEAL DENIED.
McCLENDON, J., concurs and assigns reasons.

. Bell Carpentry Works was a member of the Louisiana Safety Association of Timbermen, Self-Insurers’ Fund.

. In this assignment, plaintiff contends that the OWC made an erroneous evidentiary ruling. If a trial court commits evidentiary error that interdicts its fact-finding process, this court must conduct a de novo review. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of review. Penton v. City of Hammond Police Department 2007-2352 (La.App. 1st Cir.5/2/08), 991 So.2d 91, 95.

. The trial court's ruling on a motion to strike is interlocutory in nature and, generally, is not appealable. However, when an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory rulings prejudicial to him, in addition to the review of the final judgment appealed from. Landry v. Leonard J. Chabert Medical Center, 2002-1559 (La.App. 1st Cir.5/14/03), 858 So.2d 454, 461, n. 4, writs denied, 2003-1748, 2003-1752 (La. 10/17/03), 855 So.2d 761.

. Louisiana Revised Statute 23:1021 provides, in part, as follows:
(12) “Wages” means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident[.]