PER CURIAM.
*725 This matter is before us on appeal by defendants, James Construction Group, L.L.C. ("JCG"), The Continental Insurance Company ("Continental"), State of Louisiana, Department of Transportation and Development ("DOTD"), ABMB Engineers, Inc. ("ABMB Engineers") and Professional Services Industries, Inc. ("PSI"), from a trial court judgment rendered following a jury trial.
While the appeal was pending, this court ex proprio motu set this matter for oral argument before an en banc panel of this court, to resolve and determine, inter alia, whether or not the award of "reasonable attorney's fees" in an otherwise final judgment renders the judgment, in whole or in part, nonappealable as uncertain or indefinite in nature. The court subsequently granted a "Motion for Limited Remand" filed by appellee, ABS Services, Inc. ("ABS"), for the sole purpose of allowing the trial court to sign an order certifying the December 1, 2015 judgment as a partial judgment that is final and appealable pursuant to LSA-C.C.P. art. 1915(B). The trial court, finding no just reason for delay, signed an order on August 23, 2018, certifying the December 1, 2015 judgment as final and appealable pursuant to LSA-C.C.P. art. 1915(B).
This court, sitting en banc, has carefully considered and reviewed the pending motions and exceptions, as well as the merits of the appeal. Due to a recusal, eleven of the twelve judges of this court have participated, and a majority of the en banc panel has voted to deny the pending motions and the exception raising the objection of no clause of action filed by JCG and Continental. Also, as will be discussed further herein, a majority concurs in finding that some of the various assignments of error raised by the appellants lack merit. While a majority concludes that the award of $477,569.00 in favor of St. Paul Guardian Insurance Company ("St. Paul-Travelers") and against JCG should be affirmed on appeal and that JCG's claims against St. Paul-Travelers and ABS, thus should be *726 dismissed, there is no majority consensus on each of the remaining portions of the trial court's judgment. Because there is no majority consensus on the issues raised in the challenges to the remaining portions of the trial court's judgment on the merits, there is no executable majority as to those portions of the judgment. Accordingly, except as set forth below, the remainder of the trial court's judgment stands. Parfait v. Transocean Offshore, Inc., 2007-1915 (La. 3/14/08), 980 So.2d 634, 639.
FACTS AND PROCEDURAL HISTORY
At the outset, we deem it worth noting that although this court is unable to agree on every issue and claim presented herein, we have carefully considered the matters before us in this voluminous and procedurally complicated litigation.[1] The instant matter arises out of a road construction project on Interstate 10 in East Baton Rouge Parish, which was known as the Picardy Avenue Interchange Project (the "Project"). As the owner of the Project, DOTD contracted with JCG to be the general contractor on the Project. JCG subcontracted a portion of the work to ABS, which work included the installation of approximately 214,000 square feet of Key System 1 mechanically stabilized earth ("MSE") walls and leveling pads. The Project, however, was fraught with numerous complications and problems impacting the MSE walls, including delays in construction and materials, geotechnical problems, and inspection issues, which eventually resulted in the instant litigation.
Before the Project began, Mika McKee Lawson, JCG's project manager, notified all subcontractors that the start date was delayed from March 1, 2004 until mid-April 2004. According to Ms. Lawson, she informed ABS that JCG would be ready for it by June, but she would confirm the start date. According to ABS, ABS was instructed to mobilize on the Project on April 15, 2004, by both Rodney James, who was JCG's division manager, and Chet Chautin, a superintendent for JCG, and ABS mobilized on the Project on April 16, 2004. On April 21, 2004, however, ABS's work was delayed due to the lack of approved shop drawings for the MSE walls and lack of approved materials needed for the construction of the MSE walls, and notice of such was sent to JCG. Pursuant to ABS's Subcontract with JCG, JCG was obligated to provide the approved shop drawings and the necessary materials for the MSE wall construction. Premier Concrete Products, Inc. ("Premier"), a licensee of Keystone Retaining Wall Systems, Inc. ("Keystone"),[2] was responsible for providing JCG with the shop drawings it acquired from Keystone.
In April 2004, following a partial approval, ABS was able to begin installing the leveling pads on the Project, but was ordered by JCG to stop operations. In fact, DOTD issued a letter on April 28, 2004, requiring the construction to stop due to the shop drawings not being fully approved. This was the start of a 45-day delay on the Project, during which ABS was unable to work. ABS requested permission from JCG to demobilize from the site, but the request was denied. Eventually, ABS began losing key employees. By June 9, 2004, ABS had only built about 300 *727 linear feet of leveling pad of the 10,000 feet that were buildable, notwithstanding the Subcontract provision stating that ABS would construct 300 feet per day. Additionally, both JCG and ABS sought compensation from DOTD as a result of this 45-day delay; however, their attempts were unsuccessful.
Unbeknownst to ABS and JCG at the time ABS mobilized, there were foundation issues at the site of the Project, which involved both ABMB Engineers and PSI's engineering work and geotechnical analysis performed at the site. These issues first became known in June 2004, when the DOTD project engineer indicated that new foundation designs for the walls were being proposed. During the course of this litigation, ABS eventually discovered that DOTD was actually considering eliminating the retaining walls on the Project altogether at the same time that ABS was mobilized, but idle on the Project and waiting on approvals. Ultimately, to resolve the issues with the foundation, geopiers were added to the design of the walls as per the request of ABMB Engineers and PSI, which design changes also caused additional delays and out-of-sequence construction.
Throughout the Project, ABS encountered issues with not having the approved materials required for constructing the MSE walls. Further, the addition of the geopiers caused the entire sequence of production of the MSE walls as planned by ABS and JCG to be completely disrupted. The sequence of production of the MSE walls was critically important to ABS's planned work as agreed upon by both ABS and JCG. ABS and JCG both attempted to receive compensation from DOTD for the out-of-sequence work delays, but were unsuccessful.
In addition to the delays and out-of-sequence work, ABS encountered multiple problems related to inspections of its work. One of the inspection issues began in February of 2005, when the inspectors for DOTD utilized what was referred to as "the teeter-test." The inspectors would examine the block units used to build the MSE wall and see if the block teetered or wobbled. If there was movement, the block would be rejected. According to ABS, the use of the teeter-test resulted in numerous blocks being incorrectly rejected by the inspectors, which impeded the progress of ABS's work. Further, the teeter-test being used by the DOTD inspectors was not an acceptable inspection technique according to Keystone. On April 15, 2005, ABS shut down its operations due to this inspection issue. A meeting was held at the Project site, where Richard Brown, the inventor of the Key System 1 MSE wall system, was in attendance. After having the inspectors demonstrate their inspection procedure, Mr. Brown came up with a compromise inspection method for the inspectors to use. The compromise method involved part of the teeter-test used by the inspectors, but also incorporated a measuring tool. However, the compromise inspection method was only used for a short time. An additional inspection issue arose in April or May of 2005, involving the steel reinforcements installed by ABS around the abutments, but only arose after ABS had completed the MSE walls at four of the six abutments. The last two abutments were about halfway or more than halfway finished. As a result of the inspection issues, ABS was further delayed and incurred financial losses.
Thereafter, the relationship between ABS and JCG deteriorated. ABS's position was that JCG was in material breach and default of its Subcontract with ABS. Accordingly, ABS provided seven days' notice of the breach and default to JCG in a letter dated July 27, 2005, giving JCG an opportunity to cure. ABS set forth that as *728 a result of the material breach and default, it had sustained damages in the estimated amount of $1,680,622.70, for which recovery was sought from JCG. JCG and ABS were unable to resolve their issues, and ABS demobilized from the Project on August 9, 2005, prior to the completion of the MSE walls. JCG maintained that as a result of ABS's demobilization, ABS was in breach of the Subcontract. Thus, JCG sought recovery from St. Paul-Travelers, which had furnished ABS's performance bond on the Project. Ultimately, St. Paul-Travelers paid to JCG the sum of $477,569.00, which payment was characterized as an advance for completion costs on the Project as a result of ABS's demobilization. However, the payment was made by St. Paul-Travelers with a full reservation of rights.
On March 28, 2006, ABS filed the instant suit against JCG and its surety, Continental, contending that JCG breached the Subcontract and seeking damages, including, but not limited to, increased costs for labor, equipment, overhead, and lost profits, in addition to interest, attorney's fees, court costs, and expenses. More than a year later, on November 13, 2007, ABS added ABMB Engineers and PSI as defendants and supplemented and amended the claims and allegations set forth in the original petition.[3] ABS supplemented and amended its petition for a second time on April 4, 2008, with respect to the claims asserted against ABMB Engineers and PSI only.
Over the following years, numerous reconventional demands, cross claims, and third-party claims were filed. In 2008, JCG filed a reconventional demand against ABS, alleging that ABS was in material breach of the Subcontract. JCG also asserted cross claims against ABMB Engineers and PSI, alleging their fault and responsibility for the damages JCG incurred, as well as a third-party demand against DOTD, alleging its fault and responsibility for JCG's damages. Further, JCG asserted a third-party demand against St. Paul-Travelers, alleging that St. Paul-Travelers had failed to timely and adequately pay JCG for ABS's breach of contract, that St. Paul-Travelers breached the terms of the bond, and that St. Paul-Travelers was in bad faith. Meanwhile, St. Paul-Travelers filed a reconventional demand against JCG, alleging that JCG was not entitled to the payment it had received from St. Paul-Travelers and that St. Paul-Travelers was entitled to reimbursement plus interest on the amount previously remitted to JCG.
In late 2009, ABMB Engineers asserted cross claims against JCG, ABS, DOTD, and PSI. ABMB Engineers also filed third-party demands against Keystone, Premier (which provided certain component materials used for the Key System 1 MSE walls and was a licensee of Keystone), and Big River Industries, Inc. ("Big *729 River") (which provided other materials for use in the installation of the MSE walls). Soon thereafter, ABS filed a third-party demand against Keystone, alleging that if ABS is liable to JCG or any other party, then ABS is entitled to indemnity from Keystone. After leave was granted by the trial court, JCG amended its cross claim and asserted claims against Premier, Keystone, and Big River. PSI then filed cross claims against ABMB Engineers, DOTD, JCG, and ABS as well as third-party demands against Premier, Keystone, and Big River on October 7, 2009.
In 2010, Premier filed a reconventional demand against JCG, as well as cross claims against ABMB Engineers and PSI. Additionally, Big River asserted reconventional demands against ABMB Engineers, PSI, and JCG, in addition to a third-party demand against DOTD.
On November 5, 2012, ABS filed a motion and order for leave to file its third supplemental and amending petition, which order was signed on November 13, 2012. ABS's supplemental pleading added direct claims against DOTD, Keystone, Big River, and Premier and also added a direct action against PSI's insurer (Lumbermen's), which was later dismissed from the suit due to the insurer's liquidation and insolvency.
On September 10, 2013, the trial court signed an order dismissing with prejudice all claims between and among JCG, PSI, ABMB Engineers, and DOTD. This order also granted leave for JCG, PSI, ABMB Engineers, and DOTD to file certain amended pleadings and to withdraw certain previously filed pleadings. The amended and supplemental pleadings essentially removed all allegations between and among JCG, PSI, ABMB Engineers, and DOTD, and these parties then concentrated their claims against ABS (and its surety when appropriate) and against Keystone, Premier, and Big River.
In early 2015, an order was signed dismissing with prejudice JCG's claims against Keystone, and a subsequent order was signed dismissing with prejudice ABMB Engineers and PSI's claims against Keystone. Later that same year, judgments were signed dismissing ABS's claims against Big River and Premier. A jury trial in this matter was held on August 31-September 11, 2015. According to the pretrial order, the following parties with the following claims were to be tried: ABS's contract claims against JCG; ABS's negligence claims against ABMB Engineers, PSI, DOTD, and Keystone; JCG's breach-of-contract claims against ABS; JCG's claim for recovery against the bond and bad faith claims against St. Paul-Travelers; JCG's indemnity and direct claims against Premier and Big River; ABMB Engineers and PSI's indemnity claims against Premier and Big River; St. Paul-Travelers' claims against JCG for refund of amounts previously paid to JCG; St. Paul-Travelers' indemnity claims against ABMB Engineers and PSI; Premier's payment claims against JCG; Premier's indemnity and negligence claims against ABMB Engineers and PSI; and Big River's damage claims against DOTD, ABMB Engineers, and PSI. However, immediately prior to trial, an order was signed dismissing Big River's incidental demands against JCG, PSI, ABMB Engineers, and DOTD.
At the close of JCG's case, the trial court granted Premier and Big River's motions for directed verdict. JCG, ABMB Engineers, and PSI moved to sever Premier's claims against JCG, ABMB Engineers and PSI, which was granted, but those claims were subsequently dismissed pursuant to joint motion of those parties.
*730 After the presentation of St. Paul-Travelers' case and closing arguments, the case was submitted to the jury for decision. The jury returned a verdict finding that JCG had breached the Subcontract with ABS and that ABS did not breach the Subcontract. The jury further determined that $3,174,160.00 was the amount necessary to fairly compensate ABS for the damages it had incurred as a result of JCG's breach of the Subcontract. JCG was also found to be liable to ABS for penalties and reasonable attorney's fees in addition to the damages awarded, and 5% was awarded for penalties. The jury found that DOTD, ABMB Engineers, and PSI were negligent and apportioned 50% of the fault to DOTD, 25% of the fault to ABMB Engineers, and 25% to PSI. Neither Keystone nor ABS were found to be negligent. The jury determined that ABS was entitled to $3,174,160.00 for the damages it sustained as a result of the total negligence of the parties.[4] The jury further determined that neither ABMB Engineers nor PSI's negligence was the legal cause of damage to St. Paul-Travelers. Lastly, the jury found that $302,000.00 should be refunded to St. Paul-Travelers from JCG.
Due to a lack of agreement among the parties regarding the final written judgment, the trial court simply adopted the jury verdict form as its judgment on September 28, 2015. Thereafter, numerous post-trial motions were filed. JCG, ABMB Engineers, PSI, and DOTD filed a motion for new trial, asserting the various arguments now raised in the instant appeal, among others. ABS filed a motion for new trial to amend the judgment in order to include a provision holding Continental, the surety for JCG, solidarily liable with JCG for all amounts due ABS for JCG's breach of the Subcontract. St. Paul-Travelers filed a motion for judgment notwithstanding the verdict, noting that the jury had only awarded it a refund of $302,000.00, when the uncontroverted evidence established that St. Paul-Travelers paid JCG $477,569.00, which it was not obliged to pay in light of the jury finding no fault by ABS. Accordingly, St. Paul-Travelers argued that it was entitled to a refund of the total amount paid to JCG plus interest. St. Paul-Travelers also filed a motion for new trial for re-argument only, regarding the substance of the judgment, contending that the September 28, 2015 judgment was contrary to law in that it lacked the proper decretal language, did not identify the parties in whose favor the judgment was rendered, and did not plainly identify the amount of judgment or extent of each party's liability.
ABS's motion for new trial to amend the judgment and St. Paul-Travelers' motion for judgment notwithstanding the verdict were granted, and the remaining motions were denied. On December 1, 2015, a final judgment was signed by the trial court reflecting the court's rulings on these motions. The December 1, 2015 judgment also "retract[ed] and replace[d]" the September 28, 2015 judgment, and provided as follows:
• JCG is to pay to ABS $3,174,160.00 plus judicial interest from the date of judicial demand, March 28, 2006, until paid.
• Continental is solidarily liable with JCG to ABS up to the sum of $3,174,160.00 plus judicial interest *731 from the date of judicial demand, March 28, 2006, until paid.
• DOTD is solidarily liable with JCG to ABS for the sum of $1,587,080.00 plus judicial interest from the date of judicial demand, March 28, 2006, until paid.
• PSI is solidarily liable with JCG to ABS for the sum of $793,540.00 plus judicial interest from the date of judicial demand, March 28, 2006, until paid.
• ABMB Engineers is solidarily liable with JCG to ABS for the sum of $793,540.00 plus judicial interest from the date of judicial demand, March 28, 2006, until paid.
• Pursuant to LSA-R.S. 9:2784, JCG shall pay to ABS penalties in the full amount of $158,708.00 plus reasonable attorney's fees, which penalties and attorney's fees shall bear judicial interest from the date of the judgment until paid.
• JCG shall pay to St. Paul-Travelers the sum of $477,569.00 plus judicial interest on that amount from August 7, 2006 until paid.
• All claims of JCG against ABS and St. Paul-Travelers are dismissed with prejudice.
• St. Paul-Travelers' claims against PSI and ABMB ENGINEERS are dismissed with prejudice.
• All claims against Keystone are dismissed with prejudice.
• JCG, Continental, DOTD, PSI, and ABMB ENGINEERS are solidarily liable for all costs of the proceedings, which costs include reasonable expert fees and shall bear judicial interest from the date of the judgment until paid.
Thereafter, JCG, Continental, DOTD, ABMB Engineers, and PSI timely requested a suspensive appeal of the December 1, 2015 judgment and posted the appeal bond as ordered by the trial court.
PRELIMINARY PROCEDURAL ISSUES
During the pendency of the appeal, other procedural issues have developed, which will be addressed first. JCG and Continental filed a peremptory exception raising the objection of no cause of action in this court on July 14, 2016, asserting for the first time that ABS failed to assert a cause of action.[5] DOTD filed peremptory exceptions with this court, arguing that ABS's claim against it was both perempted under LSA-R.S. 48:251.3 and LSA-R.S. 9:2772 and prescribed pursuant to LSA-C.C. art. 3492. JCG, Continental, and DOTD filed a motion to strike certain pleadings filed in response to the exceptions. Additionally, ABS and St. Paul-Travelers filed a motion to supplement the record with the transcripts of the opening and closing arguments, which motion was referred to this panel for consideration.
Motion to Strike Oppositions to Exceptions and Motion for Leave to File Response Thereto
After filing exceptions herein, JCG, Continental, and DOTD filed a motion to strike all forms of opposition to their exceptions filed by ABS, contending that ABS's oppositions were filed late and without first seeking leave of court and that this court should strike ABS's oppositions as untimely *732 or, alternatively, permit JCG, Continental, and DOTD to file replies thereto.
The exceptions were filed on July 14, 2016. On October 3, 2016, ABS filed its appellee brief, which contained arguments relative to the issues raised in the exception filed by DOTD, but no arguments relative to JCG and Continental's exception raising the objection of no cause of action. St. Paul-Travelers filed an opposition to JCG and Continental's exception on October 3, 2016.
On October 24, 2016, JCG and Continental, and DOTD filed reply briefs, arguing therein that JCG and Continental's exception should be deemed unopposed by ABS. Thereafter, ABS filed an opposition to JCG and Continental's exception of no cause of action on November 4, 2016. On November 16, 2016, JCG, Continental, and DOTD filed a motion to strike as well as reply memoranda in response to the oppositions filed by ABS.
The only reference in the Uniform Rules of the Louisiana Courts of Appeal to peremptory exceptions filed on appeal appears in Rule 2-7.2, which is entitled "Requirements of Other Motions," and merely provides that "[a]ll other motions or pleadings (e.g., peremptory exceptions and answers to appeals) filed originally in a Court of Appeal shall be typewritten and double-spaced ...." Notably, Rule 2-7.2 does not establish a time limit for filing oppositions or reply briefs in response to exceptions. In this matter, all memoranda submitted in connection with JCG, Continental, and DOTD's exceptions were permitted to be filed in this court and were filed prior to the submission of the case to the court. Accordingly, the motion to strike ABS's oppositions is denied, and the motion for leave to file responses thereto is denied as moot.
JCG & Continental's Peremptory Exception of No Cause of Action
JCG and Continental's peremptory exception raising the objection of no cause of action relies on Pierce Foundations, Inc. v. JaRoy Const., Inc., 2015-0785 (La. 5/3/16), 190 So.3d 298, which was decided during the pendency of this appeal. JCG and Continental assert that the Louisiana Supreme Court's ruling in Pierce is dispositive of all of ABS's claims in this litigation. Specifically, JCG and Continental argue that ABS cannot maintain a cause of action pursuant to LSA-R.S. 48:256.3, et seq. , the Public Works Act for the Department of Transportation and Development ("DOTD-PWA"), because ABS failed to comply with the mandatory requirements of LSA-R.S. 48:256.5(B) to recover amounts claimed to be owed pursuant to a contract on a DOTD project. JCG and Continental allege that they are immune under the DOTD-PWA from the claims brought by ABS because ABS never raised a cause of action pursuant to Title 48, and there is no evidence of ABS's compliance with the DOTD-PWA in the record.
On differing grounds, a majority of the panel concludes that the exception of JCG and Continental raising the objection of no cause of action should be overruled. Accordingly, JCG and Continental's exception raising the objection of no cause of action is hereby overruled.
DOTD's Peremptory Exception of Peremption and Prescription
In its peremptory exception, DOTD argues that ABS's claims against DOTD were both perempted and prescribed.[6]
*733 DOTD contends that ABS's claims are perempted pursuant to LSA-R.S. 48:251.3 and LSA-R.S. 9:2772 because ABS did not file suit against DOTD within five years after recordation of the acceptance of the project. According to DOTD, it issued final acceptance of the Project on April 3, 2007, and the acceptance was recorded in the East Baton Rouge Parish mortgage records on May 8, 2007.[7] DOTD argues that ABS's claims against it therefore were perempted on May 8, 2012, as ABS did not file suit against DOTD until six months later, namely, in November 2012.
Relative to its argument that ABS's claims are also prescribed, DOTD maintains that the prescriptive period commenced on August 9, 2005, the date that ABS demobilized from the Project site.[8] ABS filed suit against JCG and Continental less than a year later on March 28, 2006. However, DOTD undisputedly was not added to the suit until November 2012, which was over seven years after ABS left the Project. Because ABS asserted only tort claims against DOTD, which have a prescriptive period of one year, ABS's claims against DOTD prescribed on August 9, 2006, unless the prescriptive period was otherwise interrupted or suspended. While ABS alleged that all defendants were solidarily liable unto ABS for all damages, DOTD argues that the suit timely filed against JCG and Continental did not interrupt prescription as to DOTD because the defendants are neither solidary obligors nor joint tortfeasors.[9]
As noted above, DOTD filed a peremptory exception raising objections of both peremption and prescription. Although five judges agree that the claims are prescribed, there is no majority vote to grant the exception on this basis. Further, as to peremption, there is no clear majority consensus that the exception should be granted *734 on this basis. Absent a majority vote to grant the peremptory exception on either ground, the exception must be overruled. Accordingly, DOTD's peremptory exception raising the objections of peremption and prescription is hereby denied.
Motion to Supplement Record
As a final preliminary matter, ABS and St. Paul-Travelers filed a motion to supplement the record with transcripts of the opening and closing arguments with this court, which was referred to the merits panel for determination. The motion to supplement, however, is denied as moot, in light of our disposition of JCG and Continental's Assignment of Error No. IX.
MERITS OF THE APPEAL
Louisiana Constitution Article V, § 8 (B) requires that "[a] majority of the judges sitting in a case must concur to render judgment." As noted above, as to the merits of the appeal in the instant case, a majority consensus has been reached as to only some of the issues raised herein. Although based on differing rationale or reasoning, a majority of the panel concurs in concluding that there was no manifest error in the jury's findings that JCG breached the Subcontract and that ABS did not, and in rejecting as meritless appellants' contention that the pay-if-paid clause in the Subcontract bars any recovery by ABS. Moreover, a majority of the en banc panel rejects as meritless appellants' arguments that ABS compromised a portion of its claims through a change order, as well as their contention that a number of trial irregularities caused them such prejudice as to warrant the granting of a new trial herein. However, there is no majority vote or agreement as to whether the amount awarded to ABS in the trial court's judgment should be affirmed or modified.
A majority of the panel does concur that the portions of the judgment rendering a money judgment in favor of St. Paul-Travelers and dismissing all of JCG's claims against ABS and St. Paul-Travelers should be affirmed, as discussed infra.
As to the remaining portions of the judgment, however, a majority consensus cannot be reached as to whether those portions should be affirmed, reversed, or modified. Accordingly, the remainder of the trial court's judgment stands. Parfait, 980 So.2d at 639.
Challenges to Jury's Factual Finding of Breach of Subcontract
(JCG and Continental's Assignment of Error No. III)
As stated above, a majority concurs or agrees that there was no manifest error by the jury in its finding that JCG breached the Subcontract and that ABS did not breach the Subcontract.
Pay-if-Paid Clause
(JCG and Continental's Assignment of Error No. IV)
Further, a majority of the en banc panel likewise concurs in rejecting JCG's defense premised on the pay-if-paid clause and finds that appellants' fourth assignment of error also lacks merit.
Damages for Delay Due to Soil and Geotechnical Issues
(JCG and Continental's Assignment of Error No. VI)
In this assignment of error, appellants contend that they are entitled to further relief in their favor on the basis that ABS compromised a portion of the claims made in this suit through Change Order No. 4. According to appellants, Change Order No. 4 addressed delays due to soil condition and the installation of geopiers on the Project. ABS signed Change Order No. 4 and received $15,747.67 in additional compensation as a *735 result. Appellants contend that this portion of ABS's damages was compromised and that ABS is not entitled to receive the $216,437.75 in damages it attributed to the soil and geotechnical issues in the July 24, 2005 seven-day notice letter to JCG.
Change Order No. 4, which indisputably altered the Subcontract, was signed by ABS on October 24, 2004, and referenced Plan Change No. 18, which modified the Prime Contract between JCG and DOTD. The stated purpose for Plan Change No. 18 was "to incorporate a design change requested by the original engineering design consultants ABMB Engineers and PSI," as the "original design did not account for soft soils beneath the MSE wall" in certain areas. Accordingly, Plan Change No. 18 provided that "Geopiers will be used as soil reinforcement to increase the soil strength for MSE Wall at Westbound Frontage Road." Plan Change No. 18 further stated that the "pricing for this work includes a lump sum price for the installation of the Geopiers, of which includes pricing for an increase in leveling pad with and the installation of [s]lip joints in the MSE wall needed to account for settlement." Notably, Change Order No. 4 for the Subcontract referenced geopier slip joints and leveling pads, which was the portion of Plan Change No. 18 that affected ABS's Subcontract. Further, the $216,437.75 in total damages claimed in ABS's July 27, 2005 letter to JCG are described as the "[a]dded cost and lost profit due to ABS' operations being [s]hut down as a result of subsoil improvements underlying MSE retaining walls C-2 and West Bound Frontage Road, Geopier installation" for the period of April 2004 through June 30, 2005.
Based on a plain reading of the documents relied upon by appellants in support of the argument that this claim was compromised, we are unable to find merit to their argument that Change Order No. 4, pertaining to geopier slip joints and increased leveling pads, had the effect of compromising the entirety of ABS's delay and shut-down claims related to the subsoil improvements. Pursuant to LSA-C.C. art. 3076, "[a] compromise settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." Moreover, as the parties asserting the existence of a compromise, appellants had "the burden of proof to show that the requirements of a valid compromise are present, including that the parties intended to settle." Suire v. Lafayette City-Par. Consol. Gov't, 2004-1459 (La. 4/12/05), 907 So.2d 37, 55. Appellants failed to establish that ABS intended to settle the entirety of its delay and shut-down claims related to the subsoil improvements by way of Change Order No. 4. Accordingly, we reject as meritless appellants' sixth assignment of error.
Refund Due by JCG Under Performance Bond
(JCG and Continental's Assignment of Error No. VIII)
Appellants argue that St. Paul-Travelers is not entitled to a refund of the amounts paid to JCG pursuant to the performance bond and that St. Paul-Travelers acted in bad faith pursuant to LSA-R.S. 22:1892 and 1973. However, appellants' assignment of error is premised on a finding that JCG did not breach the Subcontract and ABS did. In light of the fact that a majority of the en banc panel concurs in finding no error in the determination that ABS was not in breach of the Subcontract and that JCG was, we find no merit in appellants' eighth assignment of error. Thus, the portions of the judgment ordering JCG to pay St. Paul-Travelers the sum of $477,569.00 with judicial interest from August 7, 2006, *736 until paid and dismissing JCG's claims against ABS and St. Paul-Travelers with prejudice are hereby affirmed.
Procedural Trial Errors Warranting a New Trial
(JCG and Continental's Assignment of Error No. IX)
Appellants argue that a number of irregularities at the trial caused such prejudice to them that a new trial is warranted. Appellants first point out that ABS presented its case through the afternoon of the seventh day of a nine-day jury trial. By comparison, JCG, Continental, DOTD, ABMB Engineers, PSI, and Keystone had only two and a half days to present their cases. However, we note that while the trial court was insistent that the trial would only last two weeks, the trial court permitted more hours of testimony per day after the close of ABS's case, thereby allowing appellants additional time on those days to present testimony.
Additionally, appellants argue on appeal that they were prejudiced by the order of examination of the witnesses employed by the trial court, which permitted ABS to conduct direct examination, appellants to cross-examine the witness, then allowed St. Paul-Travelers, Premier and/or Big River to conduct a direct examination of ABS's witnesses, and to thereafter conclude with ABS conducting re-direct examination. Notably, when appellants challenged the order in which the parties were allowed to examine the witnesses, which challenge occurred after ABS had called its second witness to testify, the trial court stated:
I'm going to - the order and the normal procedure has kind of been thrown out of wack in this trial. Not purposefully by either party, but its [sic] just the alignment of the case. We're in cross-examination right now and - However, the parties, at least the way it has been presented to the jury and the way it has been in the court's mind is that all of you are aligned with one another on one side of the "V" and everybody on this side is on the other side of the "V". So that being said, although I will allow you to question him - if this would have been brought up... early on, then I probably would have let that side go before you got up to cross. But since I'm in cross now, direct questions.
Accordingly, the trial court permitted the remaining parties to conduct direct examination of ABS's witnesses after JCG was allowed to cross-examine the witnesses.
Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial so that justice is done." Also, LSA-C.C.P. art. 1632 provides for the normal order of trial, but expressly permits the trial court to vary the order "when circumstances so justify." "It is only upon a showing of a gross abuse of discretion that appellate courts have intervened, as the trial judge has great discretion in conducting a trial. Louisiana Safety Ass'n of Timbermen v. Carlton, 2012-0775 (La. App. 1st Cir. 12/21/12), 111 So.3d 1076, 1081 (citing Pino v. Gauthier, 633 So.2d 638, 648 (La. App. 1st Cir. 1993), writs denied, 94-0243, 94-0260 (La. 3/18/94), 634 So.2d 858, 859). After a review of the record, we are unable to find that the trial court grossly abused its discretion in conducting the order and timing of the trial.
Appellants also argue that the video deposition of an expert witness, Dr. Barry Christopher, was impermissibly allowed when the witness was present in court and that the video constituted hearsay. In response, ABS and St. Paul-Travelers *737 argue that LSA-C.C.P. art. 1450(A)(5) permits any party to use "the deposition of an expert witness for any purpose upon notice to all counsel of record, any one of whom shall have the right within ten days to object to the deposition, thereby requiring the live testimony of an expert."
Further, we note that Article 1450(A)(5) provides that "the court may permit the use of the expert's deposition, notwithstanding the objection of counsel to the use of that deposition, if the court finds that, under the circumstances, justice so requires." Additionally, LSA-C.C.P. art. 1450(C) expressly permits the trial court, in its discretion, to resolve any conflicts between the Article and LSA-C.E. art. 804 regarding the use of depositions. At trial, the video deposition was presented during ABS's case in chief and, thereafter, Dr. Christopher took the stand at trial for cross-examination by appellants.
On review, we find no error or abuse of discretion. "The trial court has much discretion under Article 1450 in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed on review in the absence of an abuse ... of that discretion." Sullivan v. City of Baton Rouge, 2014-0964 (La. App. 1st Cir. 1/27/15), 170 So.3d 186, 193. A review of the record, including appellants' Motion in Limine seeking to prevent the use of Dr. Christopher's video deposition by ABS at trial and related filings, does not support a finding that the trial court abused its discretion in permitting the video deposition of Dr. Christopher to be shown at trial.
Appellants also argue that the trial court improperly limited the parties to two jury charges. Appellants note that JCG, Continental, DOTD, ABMB Engineers, and PSI were jointly represented by counsel, and collectively were limited to only two charges. Appellants argue that as a result, the jury was only instructed as to a fraction of the legal issues presented in this case.
It is unclear from the record whether appellants objected to the trial court's limits on the jury charges. Further, in this assignment of error, appellants do not provide any argument or indication as to the legal issue upon which the trial court failed to instruct or inadequately instructed the jury. A trial judge has no obligation to give any particular jury instruction provided by a party; rather, the judge is obligated to correctly charge the jury. Adams v. Rhodia, Inc., 2007-2110 (La. 5/21/08), 983 So.2d 798, 804. As noted by the Supreme Court in Adams:
Louisiana jurisprudence is well established that an appellate court must exercise great restraint before it reverses a jury verdict because of erroneous jury instructions. Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. We assume a jury will not disregard its sworn duty and be improperly motivated. We assume a jury will render a decision based on the evidence and the totality of the instructions provided by the judge.
Id. As to this argument, we again find no error or abuse of discretion by the trial court.
Appellants also argue that the trial court erred in failing to advise the jury regarding the effect of the trial court's *738 grant of Premier's directed verdict with respect to JCG's contractual indemnity claims. However, appellants failed to object to the lack of the instruction and they did they request that the trial court give such an instruction after Premier's directed verdict was granted. Appellants waived their objection as to any error predicated upon this failure. Autin's Cajun Joint Venture v. Kroger Co., 93-0320 (La. App. 1st Cir. 2/16/94), 637 So.2d 538, writ denied, 94-0674 (La. 4/29/94), 638 So.2d 224.
Lastly, appellants claim that repeated references to JCG's settlements with DOTD, ABMB Engineers, and PSI during the trial were prejudicial, irrelevant, and in violation of LSA-C.E. art. 408. However, we find that the trial court was careful not to have any settlements mentioned when such usage was deemed prejudicial. At one point during trial, the trial court specifically directed counsel for Premier to instruct Anthony Bertas, the owner of ABS, not to mention anything about settlement in his answering of questions, which was done in the presence of all counsel. The first mention of the JCG settlements by counsel for ABS was during the cross-examination of Mrs. Lawson. Mrs. Lawson was asked if both of her depositions were taken prior to JCG settling with PSI, JCG, ABMB Engineers, and Keystone, and she responded affirmatively. No objection was made at this time. Later during the cross-examination of Mrs. Lawson, counsel for ABS referenced "the deposition you gave before you settled with PSI" in counsel's attempt to impeach the witness. Counsel for appellants then made an objection, to which counsel for ABS responded that such reference was permissible under LSA-C.E. 408 to show alignment and bias of the witness. In response, the trial court stated:
...in terms of these parties have settled with [JCG] and now [JCG] is representing the parties, I think that is perfectly fine. But not the details of the settlement, what was paid, what was not paid, but those parties was [sic] a party of the suit. Now they have settled and [JCG] have [sic] taken over their claims against ABS. I think that is fine.
Accordingly, the trial court overruled the objection.
Counsel for ABS next referred to the settlement of PSI and JCG in his cross-examination of one of appellants' experts, who was first hired by PSI and then retained by JCG. At this instance, counsel stated that "I'm asking you about ... after the settlement and after [JCG] took over the defense and indemnity of PSI is when you issued this March 30, 3015 report, right?" Appellants' counsel objected and argued that the trial court had already ruled that the specifics or terms of the settlements could not be mentioned, which includes defense and indemnity. The trial court overruled the objection. The settlement of JCG and DOTD was mentioned in the cross-examination of a JCG employee, but no objection was lodged.
Louisiana Code of Evidence article 408(A) provides:
In a civil case, evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, anything of value in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This Article does not require the exclusion of any evidence otherwise admissible merely because it is presented in the course of compromise negotiations. This Article also does not require exclusion when the evidence is offered for another *739 purpose, such as proving bias or prejudice of a witness , negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. [Emphasis added.]
Further, this court has stated that "while evidence of compromise is not admissible to prove liability, it may be properly admissible to prove bias of a witness pursuant to LSA-C.E. art. 408." Stockstill v. C.F. Indus., Inc., 94-2072 (La. App. 1st Cir. 12/15/95), 665 So.2d 802, 812, writ denied, 96-0149 (La. 3/15/96), 669 So.2d 428. On review, we find the trial court adequately limited the references to JCG's settlements with other parties and allowed only limited references in accordance with LSA-C.E. art. 408. Accordingly, this assignment of error has no merit.
As to the remaining issues and assignments of error, after careful consideration and deliberation, there is no agreement by a majority to otherwise modify, reverse or affirm; consequently, the remainder of the judgment of the trial court stands. Parfait v. Transocean Offshore, Inc., 2007-1915 (La. 3/14/08), 980 So.2d 634, 639.
CONCLUSION
For the above and foregoing reasons, we deny the motion to strike ABS's opposition to the exceptions and deny as moot the motion for leave to file responses. The motion to supplement the record is also denied as moot. We overrule JCG and Continental's peremptory exception raising the objection of no cause of action and also overrule DOTD's peremptory exception raising the objections of prescription and peremption. Those portions of the December 1, 2015 judgment ordering JCG to pay St. Paul-Travelers $477,569.00 and dismissing all claims of JCG against ABS and St. Paul-Travelers are hereby affirmed. Because we affirm the liability of JCG to ABS for damages herein but cannot reach a majority consensus as to the amount of those damages, the portion of the December 1, 2015 judgment ordering JCG to pay to ABS the sum of $3,174,160.00, plus judicial interest from the date of judicial demand, March 28, 2006, until paid, stands. In all other respects, the trial court's judgment of December 1, 2015 stands, and the costs of this appeal are assessed to DOTD, JCG, Continental, ABMB Engineers and PSI.
MOTION TO STRIKE DENIED; MOTION FOR LEAVE TO FILE RESPONSES DENIED AS MOOT; MOTION TO SUPPLEMENT RECORD DENIED AS MOOT; JAMES CONSTRUCTION GROUP, L.L.C. AND THE CONTINENTAL INSURANCE COMPANY'S EXCEPTION OF NO CAUSE OF ACTION OVERRULED; STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT'S EXCEPTION OF PEREMPTION AND PRESCRIPTION OVERRULED; TRIAL COURT JUDGMENT AFFIRMED IN PART; IN ALL OTHER RESPECTS, TRIAL COURT JUDGMENT STANDS.
Holdridge J., dissents with reason
Crzin, J. dissents with reasons
McDonald, J. concurs
Whipple, C.J. concurs in part & dissents in part for reasons assigned.
Welch J. concurs in result.
Penzato, J. dissents with reasons
Theriot, J. concurring, in part, dissenting in part for reasons assigned by C.J. Whipple
Chutz, J. concurs in part, dissents in part for reasons assigned by C.J. Whipple
Guidry, J. concurs and assigns reasons
Higginbotham, J. concurs in part, dissents in part for reasons assigned by C.J. Whipple
Pettigrew, J. concurs in part, dissents in part for reasons by both

As reflected herein, this litigation involved numerous parties and varying claims. The record is voluminous and contains in excess of 18,000 pages, plus boxes of exhibits. Accordingly, a detailed recitation of the procedural history is deemed necessary for full consideration of the various issues presented on appeal.

Keystone was the creator of Key System 1 MSE walls used on the Project.

In the first supplemental and amending petition, ABS referenced the lawsuit entitled "Louisiana Department of Transportation and Development v. Professional Services Industries, Inc." Docket No. 542,671, Section 25, 19th Judicial District Court (the "DOTD Suit"), which was filed on April 25, 2006, and alleged that PSI had notice of the instant lawsuit through the DOTD Suit. Ultimately, DOTD filed a motion to consolidate its DOTD Suit with this suit on March 12, 2009. The motion was granted by an order dated March 25, 2009. The record does not clearly reflect the outcome of the DOTD suit, as none of the pleadings filed after the consolidation have a consolidated docket caption. However, we note that on the same date DOTD filed the motion to consolidate, DOTD also filed a cross claim against PSI (and ABMB Engineers), asserting claims against PSI nearly identical to those asserted in the DOTD Suit. Further, on September 10, 2013, all claims between DOTD and PSI were dismissed with prejudice in this suit.

On the jury verdict form, the jurors were instructed that "any amount that you award in response to [this] [q]uestion will not be added to any amount that you previously awarded for breach of contract in response to Question 3 above. If you also made a breach of contract award, the Court will determine which of the two awards applies to this case based on the law." (Italics removed).

Provided that the exception is pled prior to the submission of the case and proof of the grounds for the exception are in the record, an appellate court has the discretion to consider a peremptory exception filed for the first time at the appellate level. LSA-C.C.P. art. 2163 ; Adams v. S. Lafourche Levee Dist., 2015-0507 (La. App. 1st Cir. 6/27/16), 199 So.3d 20, 24 ; Guitreau v. Juneau, 479 So.2d 431, 433-34 (La. App. 1st Cir. 1985).

Louisiana Code of Civil Procedure article 2163 provides that the appellate court may consider the peremptory exception filed for the first time on appeal, where the exception is pleaded prior to submission of the case for decision and proof of the ground of the exception appears of record. However, where the exception pleaded in the appellate court is prescription, the plaintiff may demand remand to the trial court for trial of the exception. ABS did not demand that the matter be remanded; therefore, this court has the discretion to consider the peremptory exception of prescription in this matter. LSA-C.C.P. art. 2163 ; Southgate Residential Towers, LLC v. Mapp Const., Inc., 2007-0859 (La. App. 1st Cir. 12/21/07), 2007 WL 4465777 (unpublished) (once a plaintiff invokes the right to have the matter remanded to the trial court for the purpose of having the trial court adjudicate the issue of prescription pursuant to LSA-C.C.P. art. 2163, the appellate court is without discretion in remanding the matter for consideration by the trial court).

The final acceptance included in the record on appeal does not include the date the final acceptance was recorded in the mortgage records. Rather, a certified copy of the recorded final acceptance was attached to DOTD's peremptory exception as an exhibit, and DOTD requested that this court take judicial notice of the date the final acceptance was recorded pursuant to LSA-C.E. art. 201(D).

Pursuant to LSA-C.C. art. 3492, actions sounding in tort are subject to a one-year prescriptive period, which commences to run from the date the injury or damage is sustained or when there is sufficient notice to call for inquiry. Campo v. Correa, 2001-2707 (La. 6/21/02), 828 So.2d 502, 510-11.

AS set forth in LSA-C.C. art. 2324(C), "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors." Louisiana Civil Code article 3503 provides, in part, that "[w]hen prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors." Also, LSA-C.C. art. 1799 provides that the "interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs." While not mentioned by the parties, we also note that if an obligation is joint and indivisible for the obligors, the rules governing solidary obligors are applicable, and suit against one obligor would interrupt prescription against other joint obligors. LSA-C.C. arts. 1789, 1799, and 3505. However, there are no allegations that the obligations at issue in this case are joint and indivisible.