## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CU 0076

APRIL OWENS DRAGON

VERSUS

BRIAN DRAGON

CONSOLIDATED WITH

2022 CU 0077

BRIAN A. DRAGON

VERSUS

APRIL OWENS DRAGON

*DATE OF JUDGMENT:*     AUG 3 0 2022

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT,
PARISH OF ST. TAMMANY, STATE OF LOUISIANA
NUMBER 2018-13712 CONSOLIDATED WITH 2018-13732, DIVISION I

HONORABLE REGINALD T. BADEAUX, III, JUDGE

* * * * * *

Angela Cox Williams                     Counsel for Plaintiff-Appellee
Jesmin Basanti Finley                   April Owens
Slidell, Louisiana

Scott G. Jones                          Counsel for Defendant-Appellant
Slidell, Louisiana                      Brian Dragon

* * * * * *

BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.

Disposition: AFFIRMED.

**CHUTZ, J.**

Defendant-appellant, Brian A. Dragon, appeals the trial court's judgment, which approved the relocation of the minor child he shares with his former wife, plaintiff-appellee, April Owens (formerly Dragon), and denied relief on his claims for contempt. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on February 13, 2010, and their only child was born on October 31, 2013. They separated on May 13, 2018. On August 1, 2018, Owens filed a petition for divorce seeking, among other things, an award of permanent sole custody. Dragon answered Owens' lawsuit and entered into a stipulated judgment that awarded Owens temporary sole custody of the child with express supervised visitation of the child in favor of Dragon. Owens subsequently amended her pleadings to aver that she was entitled to a divorce on the basis of adultery which Dragon "denied as written" in an answer.

At a hearing on October 9, 2018, where Dragon chose not to appear but for which his attorney was present, Owens was granted an immediate divorce. The matter of custody was disposed of in a judgment signed on October 31, 2018, which awarded permanent sole custody to Owens, finding it was in the child's best interest. Dragon was granted no visitation with the child.

The following relevant facts are undisputed. Dragon committed adultery during his marriage and was subsequently diagnosed with a substance abuse disorder for his use of methamphetamine. At the time of the parties' separation, Dragon was an attorney. As a result of his substance abuse, he was suspended from the practice of law in Louisiana. Although he had a relapse, Dragon thereafter successfully completed rehabilitation and remained sober as monitored by the Judges and Lawyers Assistance Program (JLAP). Owens was a principal of the

2

elementary school that the child attended. She suffers from an immune deficiency and also has a deficient lung which made her particularly vulnerable to Covid, placing her at high risk. As a result, it was determined that as of the 2020-2021 school year, returning to the classroom or working as a principal was not feasible and Owens was approved for disability retirement by the St. Tammany Parish School Board.

Commencing in February 2019, without court intervention and in graduated steps, Owens began allowing Dragon to visit with the child. At first the visitation was supervised, but as Dragon maintained his sobriety, the visits became unsupervised and eventually were unsupervised and overnight. At the time of the parties separation in May 2018, Dragon remained in the matrimonial domicile and Owens and the child moved to a condominium that her parents owned.

According to Dragon, in August 2019, on the child's first day of school, he arrived at the condominium around 6:30 a.m. and helped the child get ready. Because the child was wearing a school uniform, Dragon dressed in similar garb. Dragon then began "the pattern or the routine" of going to Owens' residence to prepare the child for school almost every day that the child had school. He was also present at Owens' residence daily after she returned from work with the child who typically attended the school's aftercare program while Owens finished her work day. Dragon helped the child do his homework, spent "daddy and [the child] time," and assisted in the child's bath. Dragon stated that he then tucked both Owens and the child into bed. He explained that he and Owens had a plutonic relationship and that he frequently spent the night at the condominium, sleeping in a bed with the child between him and Owens, but that Owens never spent the night at Dragon's house.

3

On August 19, 2020, Owens sent a notice to Dragon by certified mail, informing him that she and the child were seeking to relocate to Brandon, Mississippi, as soon as possible for her support system and health. She advised Dragon that her parents were also moving to Brandon and that she was transferring her medical treatment to Jackson, Mississippi.

On August 27, 2020, Dragon filed a rule to modify custody and an objection to the relocation. He also requested a temporary restraining order (TRO), precluding Owens from relocating with the child. On September 11, 2020, the trial court issued a TRO directed at Owens, restraining her from permanently removing or relocating the child until the hearing on Dragon's rules. Owens filed her motion for permission to relocate with the child on September 23, 2020. On October 7, 2020, Dragon filed a rule for contempt, averring that Owens had violated the TRO and seeking attorney fees and costs associated with the contempt claim. All matters were set for hearing together.

After a three-day hearing, the trial court took the matter under advisement. On March 10, 2021, the trial court issued extensive written reasons for judgment, approving of Owens' relocation and expressly denying Dragon relief on "the oral motion for contempt." The trial court maintained permanent sole custody with Owens but awarded Dragon unsupervised visitation every other weekend, alternating major holidays, Father's Day, and two uninterrupted two-week blocks in June and July, subject to Dragon's continued sobriety as monitored by JLAP. A judgment in conformity with the written reasons was issued on March 10, 2021. Dragon appeals, challenging the trial court's determinations, which approved the relocation by Owens and denied contempt relief.

## DISCUSSION

Under certain circumstances, the relocation of a child's principal residence to a location out of state is governed by Louisiana's relocation statutes, La. R.S. 9:355.1-9:355.19. La. R.S. 9:355.2. When the relocation of the child's principal residence is contested, La. R.S. 9:355.10 requires that the relocating parent prove that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. *Gautreaux v. Gautreaux*, 2019-1486 (La. App. 1st Cir. 7/23/20), 309 So.3d 362, 365 (citing *Curole v. Curole*, 2002-1891 (La. 10/15/02), 828 So.2d 1094, 1096).

On appeal, in challenging the trial court's approval of Owens' relocation, Dragon suggests that Owens failed to demonstrate her request was in good faith. He also maintains that while the evidence supports a finding that relocation is in Owens' best interest, the record lacks support to find the move is in the child's best interest.

### Good Faith:

The jurisprudence has defined the meaning of "good faith" in the context of relocation as a legitimate or valid reason for the move. Legitimate reasons for relocation include: for significant health reasons; to protect the safety of the child or another member of the child's household from a significant risk of harm; and to be close to significant family or other support networks. See *Wylie v. Wylie*, 52,800 (La. App. 2d Cir. 5/22/19), 273 So.3d 1256, 1259.

The trial court found that Owens' request for relocation was made in good faith. Specifically, the trial court concluded that the move was necessary for maintenance of Owens' physical and mental health which, due to her underlying health condition, were intertwined. Also noted by the trial court in support of its conclusion that Owens established the requisite good faith is that she desired "to

5

start anew somewhere far enough away to shield her and [the child] from the toxic atmosphere [of the community] created solely by [Dragon]."

In her testimony, Owens explained that in Brandon, she resided on a working horse farm. Because she shows horses, she found the new location relieved stress, which is a significant trigger for her immune disorder. She also explained that as a former principal in an elementary school with 115 employees and 800 students, she had been involved in many community organizations and was well known in the community. After the demise of the marriage, when Owens attended school functions, she described the stigma that she faced as a result of Dragon's actions which gave rise to the divorce. This testimonial evidence supports the trial court's express findings that Owens is relocating for legitimate reasons including significant health reasons and to remove herself and the child from the community in which they faced stigma as a result of Dragon's pre-divorce conduct.[1] Thus, the record supports the trial court's determination that Owens' request was made in good faith.

**Best Interest:**

Louisiana's relocation statutes retain the "best interest of the child" standard as the fundamental principle governing decisions made pursuant to its provisions. *Gautreaux*, 309 So.3d at 365. In particular, La. R.S. 9:355.14(A) provides that:

> In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:
>
> (1)   The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

---

[1] Additionally, Owens testified that her parents were relocating from Poplarville, Mississippi to Brandon, she and the child would be living with them, and they would be providing her and the child with support. Therefore, the legitimate reason of being close to significant family is a finding also supported by the evidence.

(2)     The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3)     The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4)     The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5)     Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6)     How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

Although this statute requires the court to consider the twelve listed factors when conducting its best-interest analysis, the court is free to weigh some factors more heavily than others. See *Gathen v. Gathen*, 2010-2312 (La. 5/10/11), 66 So.3d 1, 10. Because the trial court is in the best position to judge the credibility of the witnesses and consider the wide array of facts, the trial court's factual determinations are entitled to great weight and will not be overturned absent an abuse of discretion. *Gathen*, 66 So.3d at 9.

7

In addition to the stigma in the community associated with his father's pre-divorce actions from which the relocation shielded the child, in reaching its conclusion that the move to Brandon was in the child's best interest, the trial court stated:

> the move is not so far away so as to deprive [Dragon] of regular visitation and contact with [the child]. [The child] is enrolled in a school that is equal to or perhaps superior to [the child's] former school, and is receiving speech therapy for his stuttering. Also ... [the child] will have the benefit and support of the maternal grandparents.

In an articulated application of the La. R.S. 9:355.14 factors, while recognizing and crediting Dragon's success with his sobriety and his extensive, close family ties, the trial court emphasized the evidence establishing that Owens had been the child's primary caregiver, especially and by necessity during Dragon's extramarital affairs, drug abuse, and subsequent inpatient treatment. Also, the testimony by Owens, who has a PhD in education, that she had "carefully researched" the schools the child had available to attend as well as the opportunities for speech therapy services was weighed by the trial court in Owens' favor in its determination that the relocation was in the child's best interest. The trial court found significant that Owens had already demonstrated a willingness to promote the child's relationship with the father by allowing more visitation to Dragon as he became more successful in his sobriety. Relying on Dragon's testimony that because he was unable to work as an attorney during his suspension, he had been working as an Uber and Lyft driver, as well as at Carpet World, and that he would find a place to live in Brandon in the event Owens' relocation was approved, the trial court concluded that Dragon could readily relocate to Brandon if he so chose. Because the new environment was less stressful on Owens, the trial court pointed out that the child benefited from his mother's increased serenity. Finally, given Dragon's substance abuse history as well as the child's undisputed

8

involvement and familiarity with horses, the trial court determined that allowing the child a short period of time to reside in the wholesome environment of a horse farm, which would be replaced by a more traditional life once Owens' parents relocated to Brandon, was in the child's best interest. Mindful that the trial court is in the best position to judge the credibility of the witnesses and consider the wide array of facts and that, therefore, its factual determinations are entitled to great weight, in light of the evidence in the record, we cannot say the trial court abused its discretion in approving Owens' relocation with the Seechild to Brandon.

**Contempt for Failure to Timely Notify of Relocation or TRO Violation:**

Based on assertions he made during the relocation hearing that Owens failed to timely provide him with notice of her intent to relocate with the child, Dragon urges Owens should be ordered to pay for the costs associated with his filing of the motion for a TRO. It is undisputed that he did not raise this issue in a written pleading and that the judgment expressly states that "the oral motion for contempt" is denied.

La. R.S. 9:355.5(A)(1) provides that notice of a proposed relocation of the principal residence of a child shall be given by registered or certified mail no later than the sixtieth day before the date of the proposed relocation. Here, it is undisputed that while Owens gave Dragon the requisite notice, it was not within the 60-day time period. La. R.S. 9:355.6 sets forth the remedies available for the failure to provide any notice of relocation, stating:

> The court may consider a failure to provide notice of a proposed relocation of a child as:
>
> (1)   A factor in making its determination regarding the relocation of a child.
>
> (2)   A basis for ordering the return of the child if the relocation has taken place without notice or court authorization.

(3) Sufficient cause to order the person proposing relocation to pay reasonable expenses incurred by the person objecting to the relocation.

In making its ruling and declining to order Owens to pay to Dragon his reasonable expenses incurred by objecting to the relocation, the trial court did not find the less-than-sixty-day notice a factor in making its determination regarding the relocation of the child. Similarly, it declined to order return of the child to Louisiana, and concluded that Dragon failed to establish sufficient cause to support such an order. The trial court duly noted that Owens failed to comply with the notice requirement but took into account her need to act quickly because the condominium, owned by her parents, sold "at a most inconvenient time, namely the beginning of a new school year." Thus, the trial court concluded that "[i]f [the child] were to start at a new school, it was in his best interest to make that change at the beginning of the school year, rather than mid-semester, or even mid-year." The best interests of the child trump the procedural requirements of La. R.S. 9:355.4. *Granger v. Granger*, 2011-77 (La. App. 3d Cir. 6/15/11), 69 So.3d 666, 669, writ denied, 2011-1882 (La. 9/16/11), 69 So.3d 1152. Moreover, both Dragon and Owens testified that Dragon knew of the possibility of the proposed relocation before the date that he received actual notice, albeit he testified that he had hoped to accompany Owens and the child in relocating to Brandon. Accordingly, we find no error.[2]

Dragon also filed a written motion for contempt directed at Owens' removal and relocation of the child to Mississippi prior to the hearing in violation of the TRO. In his reply brief, Dragon focuses on the following trial court's findings:

---

[2] Because there is no error under an application of the Chapter on Relocating a Child's Residence, we find it unnecessary to determine whether the trial court's alternative holdings are erroneous, approving the relocation and denying Dragon the relief for untimely notice of relocation based on a conclusion that La. R.S. 9:355.1-9:355.19 are inapplicable since Owens has permanent sole custody of the child. Therefore, we pretermit such a discussion.

> Despite a court order prohibiting [Owens] from permanently removing [the child] from the jurisdiction of the court until a hearing could be held, it is apparent from the testimony that that is precisely what she did. By the time [Owens] had notified [Dragon] of her intent to relocate to Brandon, Mississippi with the minor child, she had already enrolled him in a school there and had established a residence. Subsequently, in late September [prior to the hearing] she moved her car registration to the new Mississippi address. [Owens] and [the child], up until the relocation, had been living in [Owens'] parents' condominium .... Her intention was to live there until the condominium sold. When the sale began proceeding to closing beginning in late July 2020, [Owens] put her plan into effect.

In his reply brief assertions, Dragon takes umbrage with Owens' assertion that she did not violate the trial court's TRO because she did not permanently remove the child from Louisiana prior to the hearing.

To find a person guilty of constructive contempt,[3] the court must find that she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. If the person charged with contempt is found guilty, the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed. La. C.C.P. art. 225(B). The trial court is vested with great discretion in determining whether a party should be held in contempt of court and its decision will be reversed only when the appellate court discerns a clear abuse of that great discretion. *Underwood v. Underwood*, 2021-0277 (La. App. 1st Cir. 10/21/21), 332 So.3d 128, 153-54.

In fact, neither the trial court's judgment nor its written reasons contain an express disposition of Dragon's motion for contempt based on a violation of the TRO. The trial court did not impose any punishment against Owens despite its finding that the move to Mississippi prior to the hearing was in violation of the TRO. And in his motion for new trial, Dragon did not point out this failure to the trial court.

---

[3] See La. C.C.P. art. 224(2) ("Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court" constitutes a constructive contempt of court).

11

Generally, silence in a judgment as to any issue, claim, or demand placed before the trial court is deemed a rejection of the claim and the relief sought is presumed to be denied. *Schoolhouse, Inc. v. Fanguy*, 2010-2238 (La. App. 1st Cir. 6/10/11), 69 So.3d 658, 664. Thus, the claim was denied and we review it accordingly.

The trial court found that Owens' motivation in relocating was based on her concern for the best interest of the child and the effect a move interrupting the child's school year would have. Owens explained the differences in the two school districts' Covid restrictions at the time she relocated, including the heightened risk to which she was exposed by the St. Tammany Parish masking policy. The undisputed evidence additionally showed that unless she and the child moved back into the former matrimonial domicile, of which she has "bad memories," Owens had no other place to reside in St. Tammany Parish. And during the hearing, Owens testified that she would "do whatever the Court tells [her] to do," insofar as relocation, although she admitted that she preferred to remain in Mississippi. The trial court obviously determined that Owens' did not violate the TRO intentionally, knowingly, and purposely, without justifiable excuse. In light of this evidence and the trial court's finding that Owens' motivation in relocating was concern for the best interest of the child, we cannot say that conclusion is a clear abuse of the trial court's great discretion.

### DECREE

For these reasons, the trial court's judgment is affirmed. Appeal costs are assessed against defendant-appellant, Brian A. Dragon.

**AFFIRMED.**

12